## WM. E. DREW (SURVIVING PARTNER OF S. C. FOR-SAITH & CO.) v. WM. H. EDMUNDS AND NELSON ELLISON.

*Sale. Warranty. Declarations. Off-set.*

1. In the sale of an engine and boiler, the vendor's declarations as to their quality constitute a warranty that they are as described, when the declarations are relied on by the buyer as the basis of the contract, and the vendor so under-stands it.

2. A defect in a steam chest, readily discernable on taking off the cover, is not a latent defect.

3. The plaintiff sold an engine and boiler with the fittings to the defendants and received the pay therefor; and when the plaintiffs learned that there was dif-ficulty with the governor, they made a proposition to furnish another and take back the old one at a difference of $45, which offer was accepted without condition; *Held*, in an action to recover the $45, where the defendants were allowed damages under a plea in off-set for defects in the engine, that plain-tiffs were entitled to recover the $45 on the ground that the acceptance was according to the terms of the offer.

4. A plaintiff who has made two parties defendants is in no situation to deny a counter-claim on the ground that it did not accrue to both and when he had always treated the deal as with both.

ASSUMPSIT. Plea, non-assumpsit, and two pleas in off-set. Heard on a referee's report, December Term, 1887, TYLER, J., presiding. Judgment *pro forma* and without hearing as fol-lows : The exceptions are overruled ; the plaintiff has judgment against the defendants for the item of $84.41 and interest from Feb. 10, 1881 to December 6, 1887, making $120 ; and the de-fendants on their plea in off-set have judgment against the plain-tiff for $212.34 as of the same date ;—and judgment entered for the defendant to recover of the plaintiff the balance between said sums, being $92.34.

The referee found substantially as follows :

" S. C. Forsaith, one of the plaintiffs, deceased after the commencement of this suit. In the fall of 1880, Wm. H.

26

Edmunds, one of the defendants, desired to build a steam saw mill and arranged with Nelson Ellison, the other defendant, to furnish him the money with which to purchase a boiler and engine to propel such mill; and the boiler and engine were to be billed to him, Ellison, and to be and remain his property until paid for by said Edmunds.

Edmunds having received a catalogue of boilers and engines kept by the plaintiffs for sale went to their place of business at Manchester, N. H., with the view of purchasing a boiler and engine of them. They had a certain boiler at their shop in Manchester, and an engine at Bridgeport, Conn., both of which were second-hand, and described in the catalogue which Edmunds had received from the plaintiffs. They offered these to Edmunds with the requisite machinery, couplings, pipes, etc., to put them in operation at a certain price and requested him to go to Bridgeport and see the engine, but Edmunds replied that he had no knowledge of such property, and if he bought it, he should rely upon their description of it. He also told the plaintiffs for what purpose he wanted the boiler and engine. He also told them he was not prepared to accept their offer at that time, but that he desired to consult Ellison on the subject and that he would go home and consult him, and let them know in a few days whether their offer would be accepted, and which outfit he would take, two having been offered. The offer referred to is contained in a letter addressed to Nelson Ellison, Bethel, Vt., in which were the following descriptions: ' Pulley has been cracked but strongly mended. The bed is 13 feet by 27 inches, and has been cracked but well patched, and is strong as ever. Engine in good order, and complete with all its parts, including governor; been overhauled and put in good working order; a bargain. Price $425. We offer you our boiler No. 4233, repaired, tested, * * complete, ready to set up,' etc.

"The offer contained in the letter was accepted, and the engine and machinery were shipped December 4, 1880, to Ellison at Bethel, Vt., and were taken by said Edmunds and set up and put in operation. It was found that the injector was too small for the boiler, and that the governor was not suitable for an engine running a saw-mill. On learning this from the defendants, the plaintiffs took out the old injector and put in a new one, and charged on their specification in this action $103.30, and gave credit for the old one $33.70.

"But, as I find that the first injector furnished was **too**

small to supply this boiler with water, and the plaintiff's con-
tract required them to furnish a suitable injector, I have disal-
lowed all these items of debt and credit.

" There was also trouble with the governor to the engine as
before stated, and said foreman of the plaintiffs had his atten-
tion called to it, when at the mill changing injector, and then
told Edmunds that it was not suitable for his business. After
their foreman returned, the plaintiffs on the 22d day of Feb-
ruary, 1881, addressed a letter to the defendant Ellison, and
among other things making this offer: 'As to the regulator
(governor) itself, it would work well enough on an engine
running steadily as this did before, not running so uneven as
you do, in feeding on to a log full size of your saw, then out
of your log with nothing on, and we fear will trouble you.
Our foreman took the proper measures, so if you desired, we
could get out and fit here a new governor and send you, with
valves and fittings, all new, best the country affords, at a dif-
ference of $45 between these new and your old governor and
parts.' Ellison made no reply to this offer, but sent the letter
to Edmunds, who on the 28th day of February, telegraphed
said firm from Bethel as follows: ' Send governor and fittings
to-morrow express without fail, reply to-night,' thereby
accepting the offer.

" Inasmuch as Edmunds told the plaintiffs he wanted this
engine to run a saw mill and they sold it for that purpose, I
think they were bound to furnish the engine with a suitable
governor for that purpose, and so find subject to the opinion
of the court. If the court should hold otherwise, or should
also find that the claim of the defendants that the plaintiffs
were under obligations to furnish them a suitable governor with
the engine for operating a saw mill, was waived or settled by
the acceptance of their offer by Edmunds as aforesaid, I then
allow the item of $45.00 for the governor and disallow the item
of $1.20 for work on the same,—interest is also to be allowed
on said item of $45.00 from April 1, 1881; otherwise I disal-
low both said items.

"Soon after the new governor had been put on to the engine,
it was discovered that the steam chest of the engine was out of
repair and leaked so badly as to very much lessen the power of
the engine. Edmunds tried to get along with it, by wedging
it up and repacking it, but could only saw in his mill about
2500 feet a day, with the same help that after the engine had
been repaired he sawed, as the evidence shows, 10,000 feet per

day. On taking off the cover to the steam chest, it was discovered that the latter had been badly eaten by steam, and had been fixed up with red lead or putty. Edmunds managed to saw out his logs that winter and spring but the next November he took his engine or portions of it to the shop of David Shortsleeves at Rutland for repairs. On examining the steam chest it was found to be so badly eaten that it could not be repaired so as to do much service, and a new steam chest was made for the engine. This defect in the steam chest was not visible until cover was removed. From the evidence I find that the engine was not in good order and complete in all its parts, etc., nor had it been put in good working order when shipped from plaintiff's place of business, according to the printed description of the same aforesaid. I also find that it would have cost to put it in such order or repair as required by the said printed description of the same, one hundred and fifty dollars, in addition to the governor furnished by the plaintiffs as aforesaid, and with which sum the plaintiffs are chargeable under their contract or warranty. I also find that the said Edmunds ordered of the plaintiffs certain other machinery, belting, work, etc., it being items No. 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12 as numbered and grouped in the plaintiffs' specifications, amounting in all to $84.41, at the agreed price to be charged therefor.    *    *    *

" I further find that the descriptions of said boiler and engine and the representations as to their condition and state of repair contained in said printed slips upon said exhibit 18 constituted the basis of the purchase of said property made by the defendants and were relied upon by them as the Plaintiff Drew well knew. I therefore find that such descriptions and representations constitute a warranty of said boiler and engine,—that they were both in the condition and state of repair indicated thereby. I further find that no other representations than as above stated were made in regard to said engine and boiler. After the sale of the same to the defendants as aforesaid, said engine was brought to the plaintiff's shop at Manchester aforesaid and examined by said Drew and the plaintiff's foreman and so far as they could see it was all right; but they did not open the steam chest, and without opening it, its condition could not be seen."

It was found subject to the opinion of the court, that if the defendants were liable to pay for the governor, $45.00, the

plaintiffs were entitled to recover $180.93, including interest to December 6, 1887, and certain other items amounting to $84.41, and interest on these ; and that if the defendants were entitled to recover on their pleas in offset, the said $150.00 should be on interest from January 1, 1881, to December 6, 1887, and it would amount to $212.34.

*French & Southgate*, for the plaintiff.

It is clear that Ellison is liable with Edmunds. The charge for the new governor is correct. There was a proposition and it was accepted. The defendants had had the engine about three months, had full knowledge of its capacity, and did not claim that the plaintiffs were any way responsible by their contract of sale for the failure of the governor. But in any view they are entitled to this item.

The plaintiffs made no representations as to the fitness of the engine for sawing logs, and there was no evidence that they had any prior knowledge about it. They purchased it second-hand as it was ; they only represented that it was in " working order." It was in working order and plaintiffs were guilty of no fraud.

In sales by description the only implied warranty is " that the property shall answer the description." 2 Benj. Sales, s. 966 (p. 844) ; Story Sales, s. 358 ; 34 N. Y. 118 ; *Sweet* v. *Colgate*, 20 Johns. 196 ; *Mixer* v. *Coburn*, 11 Met. 559.

The defendants' claim in offset has no foundation. The trouble with the steam chest was a latent defect, unknown to the plaintiffs. They purchased the engine in Connecticut, as second-hand, and it remained there until sold to defendant, and was then brought to Manchester and examined by the plaintiffs and their foreman, and considered all right.

Numerous cases of this character have been before our court, involving the sale of a potash kettle, *Stevens* v. *Smith*, 21 Vt. 90 ; *Combination Lock, Tilton Safe Co.* v. *Tisdale*, 48 Vt. 83 ; worthless cow, having latent defects, *Bryant* v. *Pember*, 45 Vt. 487 ; wrought iron shafting with latent defects, *Bragg* v. *Morrill*, 49 Vt. 45.

There is not an implied warranty against latent defects unknown to the vendor. 2 Benj. Sales, ss. 968, 985. The rule of *coveat emptor* applies where the seller is not the maker or grower. *Hoe* v. *Sanborn*, 21 N. Y. 552-566 ; *Kimball* v. *Vroman*, 35 Mich. 310 ; *Parks* v. *Morris Ax and Tool Co.* 54 N. Y. 586 ; *Cogel* v. *Kingsley*, 89 Ill. 598 ; Benj. Sales, p. 814, note 8 ; *McGraw* v. *Fletcher*, 35 Mich. 104 ; *Whitmore* v. *South Boston Iron Co.* 2 Allen, 52-58 ; *Gossler* v. *Eagle Sugar Refinery*, 103 Mass. 331 ; *Welsh* v. *Carter*, 1 Wend. 185.

. Not giving notice is an admission that the plaintiffs were not liable to them, or a waiver of any claim. 1 Par. Con. 475.

When the facts are found the question whether they amount to a warranty or implied warranty is a question of law. In written sales it is always a question of law, unless the language is equivocal or the intent doubtful. 2 Benj. Sales, p. 813, note 7 ; Story Sales, 358 (441-4) ; *Edwards* v. *Marcy*, 2 Allen, 486, 489 ; *Brown* v. *Bigelow*, 10 Ib. 242 ; *Whitney* v. *Thacher*, 117 Mass. 523.

If Ellison should be discharged the offset would fall, as the sale was made to him. A set-off can only be between the parties to the suit. Revised Laws, 916 ; *Bragg* v. *Fletcher*, 20 Vt. 351 ; *Adams* v. *Bliss*, 16 Vt. 39 ; *Phelps* v. *Buckley*, 20 Vt. 17.

*J. J. Wilson*, for the defendants.

The injector, governor and steam chest were not such as the contract required. The plaintiffs afterwards furnished a new injector and governor, and a bill of goods ordered by the defendants, amounting to $84.41.

The defendants resist the charges except the $84.41, and seek to recover damages. The referee disallowed the charge for injector ; and, as it appears from the report, the plaintiffs have not done anything more than make their contract good as to the governor. They were bound to do what they did do ; and the defendants have never waived their damages. The

Drew v. Ellison.

referee also disallowed the bill for the governor; he might have allowed it, and allowed the defendants full damages for breach of warranty, and arrived at the same result.

The referee found that the descriptions and representations constituted a warranty. The defendants are entitled to recover the difference between the damages allowed at $150.00 and interest, and $84.41 and interest, amounting to $92.34.

As to its being a sale for a particular purpose, see *Beals* v. *Olmstead*, 24 Vt. 114.

The opinion of the court was delivered by

VEAZEY, J. When the plaintiffs got word that there was difficulty with the governor they made a proposition to furnish another with all the fittings, etc., and take back the old one, at a difference of $45. The defendants accepted the offer without objection or condition. Whatever might have been the right of the defendants independent of this arrangement, we hold that having gone into it they must stand by it. The plaintiffs had the right to understand, by the acceptance of their offer without notice of other claim, that the acceptance was according to the terms of the offer.

The plaintiffs are therefore entitled to recover the item of $45, with interest thereon since April 1, 1881.

The plaintiffs insist that the defendants cannot maintain their claim in offset for several reasons. First, that there was no warranty in the sale of the engine and boiler. The referee finds there was a warranty, and bases that finding on the statement in the printed slip (taken in connection with other findings), that the engine had been overhauled and put in good working order and was in good order and complete in all its parts. It is further found that this description and representation constituted the basis of the purchase by the defendants and were relied upon by them as the plaintiffs well knew, and that they knew nothing about such property as to its value or quality, and had then had no experience in using it, and it did not appear that either of the defendants examined the engine and boiler before the purchase.

The findings are explicit that the defendant Edmunds, who made the purchase, told the plaintiffs that he had no knowledge of such property, and if he bought this engine and boiler he should rely upon the plaintiffs' description of them; and that he also told the plaintiffs for what purpose he wanted them, which was the sawing of logs into lumber in a saw-mill. The plaintiffs were dealers in engines and boilers in Manchester, N. H.

In *Hogins* v. *Plympton*, 11 Pick. 99, SHAW, Ch. J., said: "There is no doubt that, in a contract of sale, words of description are held to constitute a warranty, that the articles sold are of the species and quality so described." Again in *Winsor* v. *Lombard*, 18 Pick. 60, the same learned judge said: "It is now held that, without express warranty or actual fraud, every person who sells goods of certain denomination or description, undertakes, as part of his contract, that the thing delivered corresponds to the description, and is in fact an article of the species, kind and quality thus expressed in the contract of sale."

This doctrine has been reasserted in many cases in Massachusetts and elsewhere. In this state in *Beals* v. *Olmstead*, 24 Vt. 114, it was held that when the vendor's statements form the sole basis of the sale, his declarations are ordinarily to be regarded as a warranty.

The referee finds that the engine was not in good order and complete in all its parts, nor had it been put in good working order, according to the printed description. There was therefore the positive affirmation that the article had certain qualities which the referee finds it did not have, and this affirmation was relied upon as the basis of the sale and was so understood by the vendors. In *Pasley* v. *Freeman*, 3 T. R. 57, BULLER, J., referring to the early cases of *Cross* v. *Gardner*, Carthew 90; 3 Mod. 261, and *Medina* v. *Stoughton*, 1 Lord Raymond, 593; Salk. 220, said: "It was rightly held by HOLT, Ch. J., and has been uniformly adopted ever since, that an affirmation at the time of a sale is a warranty,

Drew v. Ellison.

provided it appear in evidence to have been so intended." In determining whether it was so intended, Benjamin, in his work on Sales, s. 613, says : " A decisive test is whether the vendor assumes to assert a *fact* of which the buyer· is ignorant, or merely states an opinion or judgment upon a matter of which the vendor has no special knowledge, and on which the buyer may be expected also to have an opinion, and to exercise his judgment. In the former case there is a warranty, in the latter, not."

In view of all the facts in the report we think it impossible to predicate error in the conclusion of the referee that there was a warranty.

It is further claimed that the breach found by the referee is in respect to a latent defect. An express warranty covers a latent defect. But ·we do not think the defect in the steam chest as found by the referee was a latent defect. It was readily discoverable, on taking off the cover, that the chest had been badly eaten by steam, and .had been fixed up with red lead or putty. It would seem that such a defect could not escape observation in overhauling an engine, as the plaintiffs said they had done. The defendants could not discover the defect, because not visible until the cover was removed, and they would have no occasion to take it off if in good order. They had the right to rely on the representation.

It is further claimed that the offset did not accrue to both defendants, and so must fall.

We see no good ground for severing the deal. It ran through several months and ·the plaintiffs always treated it as a deal with both defendants, and made their writ and specifications against both. They are in no situation to deny a counter-claim in the law suit in behalf of both.

Judgment reversed ; and judgment for the defendants for $28.44, without costs.