# Norton & Lamphere Construction Co. v. Blow & Cote, Inc.

[183 A.2d 230]

May Term, 1962

Present: **Hulburd, C. J., Holden, Shangraw, Barney and Smith, JJ.**

Opinion Filed July 16, 1962

*Clarke A. Gravel* and *Robert K. Bing* for the plaintiff.

*Clifton G. Parker* for the defendant.

**Smith, J.** This is an action of contract instituted by Carleton W. Lamphere and Douglass A. Norton, d.b.a. Norton & Lamphere Construction Company, the plaintiff, against Blow & Cote, Inc., the defendant, in which the plaintiff alleges a breach of the contract between the parties on the part of the defendant with a consequent damage to the plaintiff. Jury trial in the Chittenden County Court in November 1961 resulted in a verdict and judgment for the plaintiff in the amount of $31,000. The case is here on defendant's appeal, duly taken, from the judgment and verdict below.

Defendant's first exception is briefed upon the refusal of the lower court to grant its motion for a verdict directed in its favor at the close of the plaintiff's evidence, which motion was renewed at the close of all the evidence in the case. The essential basis for the motion was that the lower court erred in submitting the determination of the existence of an enforceable contract between the parties to the jury.

In considering defendant's exception to the denial of its motion for a directed verdict, the evidence must be taken in the light most favorable to the prevailing party and the effect of modifying evidence excluded. The weight of the evidence and the credibility of the witnesses are for the jury to determine and all conflicts are to be resolved against the excepting party. The motion cannot be granted if there is evidence fairly and reasonably tending to justify the verdict. *Whitmore* v. *Mutual Life Insurance Co.,* 122 Vt. 328, 330, 173 A.2d 584; *Langevin* v. *Gilman,* 121 Vt. 440, 445, 159 A.2d 340.

The defendant is engaged in the road construction business. In the late spring of 1959, the defendant was awarded a contract for a

road construction job in the vicinity of Danville, Vermont, by the State of Vermont. The plaintiffs were associated as partners in the sand and gravel business which included the crushing of rock to various sizes for use in road construction. Upon learning of the contract for road construction awarded to the defendant, the plaintiff contacted Mr. Cote, vice-president and treasurer of the defendant corporation, and a discussion ensued involving the furnishing of the crushed rock needed for the road construction by the plaintiff to the defendant.

Mr. Cote asked the plaintiff to furnish the defendant a quotation on the crushed rock needed and the plaintiff immediately proceeded to do so at Mr. Cote's office. The quotation, furnished in writing by the plaintiff to the defendant was $1.40 per yard for 24,000 yards of 4-inch minus base rock, and $1.80 a yard for 3,500 yards 2½-inch minus rock. The total written estimate was $39,900.

After the plaintiff submitted the quotation to Mr. Cote he stated that he wished to discuss the matter with his partner, Mr. Blow. Later, the plaintiff Norton was called by Mr. Blow and told that they would have the job and that a contract would be sent them.

On July 13, 1959, the following letter was sent by the defendant to the plaintiff:

"Norton & Lamphere Const. Co.
P. O. Box 46,
Jericho, Vermont

Gentlemen:

We enclose herewith three copies of contract which have been revised per your request.

The original and copy should be signed by you and returned to this office. At which time, we will sign the original and return it to you.

The third copy, which is marked, should be retained for your files.

Very truly yours,

BLOW & COTE, INC.

(Dennis Cote)"

The original and copies mentioned in the above letter were in the words and terms below quoted:

"P.O. Box 46,
Jericho, Vt.

Blow & Cote, Inc.
P.O. Box 637
Morrisville, Vermont

Gentlemen:

We hereby submit specifications and estimates for: Danville Project F 028-3(2).

Crushing, feeding, stocking and screening the following items in strict accordance with Vermont State Highway Specifications:

Item 204 Approx. 24,000 c.y. Sub-base of Crushed Rock (4" minus) at One Dollar and Forty-Cents ($1.40) per cubic yard. To be completed by May 01, 1960.

Item 211. Approx. 3,500 c.y. Crushed Stone Base Course (2½" minus) at One Dollar and Eighty Cents ($1.80) per cubic yard. To be completed by June 01, 1960.

Payments to be made bi-monthly and to be based upon estimated quantities in stockpiles.

NORTON & LAMPHERE CONST. CO.

By

Approved and Accepted by:

.......................................................................................
.......................................................................................
Date ...................................................................."

The revision made at the request of the plaintiff was the provision for the bi-monthly payments.

The original and copies of the above document were signed by Mr. Lamphere for the plaintiff, who retained one copy and sent the original and other copy back to the defendant. The document was never signed by the defendants, or either of them.

The further history of the transactions between the parties discloses that the plaintiff was first informed by the bookkeeper of the defendant that the defendants had not been in the office to sign the documents. In July 1959 Mr. Lamphere discussed the crushing of the rock with Mr. Cote. In September 1959 the plaintiff was informed by Mr. Cote that it would be necessary for the defendant to remove the overburden, referring to the surface soil over the rock to be crushed, before plaintiff could commence the rock crushing. In October 1959

Mr. Cote informed the plaintiff that the State of Vermont would not pass the rock (the subject of the proposed crushing) as being hard enough for the purpose.

In the latter part of October, the plaintiffs called upon Mr. Cote, who then informed them that a further sample of rock from the proposed quarry was to be submitted to the State and that plaintiffs would be notified of the result of the test. This was never done, although the rock in question received state approval and the defendant never permitted the plaintiff to crush the rock for it, but on the contrary, the defendant itself performed that operation. Evidence is undisputed that the plaintiff performed various acts and made expenditures in reliance upon the purported contract.

Apparently, the defendant was under the impression that if it did not sign the documents submitted to the plaintiff, no contract would exist between the parties, but the testimony of Mr. Cote was that the parties had reached agreement on the terms expressed in the document which defendant's own letter termed a contract, and that no disagreement then existed between them.

In this Court, the defendant, by its brief, recognizes that under the circumstances here existing it would not have been necessary for the parties to have had a formal written contract in order to establish the existence of an enforceable agreement between them, but alleges that the discussions, negotiations and documentary evidence present in this case do not disclose such a final acceptance on the part of the defendant as to constitute a contract between the parties.

■■ In the instant case, however, we do have a written contract, containing terms which, the evidence discloses, had been fully agreed upon by both parties. Drawn by the defendant, who now seeks to deny it, it was sent to the plaintiff who affixed its signature to it, thus accepting it. While the defendant did not sign the contract, as it had agreed to do, the fact is that it had already accepted the terms expressed therein and had itself reduced them to writing. The accepting and adopting of a written contract by a party who has not put his name to it binds such party equally as if he had signed such contract. When this contract was accepted by the plaintiff, under the circumstances existing here, it became binding upon both parties, the same as if it had been signed by both. *Brandon Manufacturing Co.* v. *More,* 48 Vt. 322; *Patchin* v. *Swift,* 21 Vt. 292, 296. The fact that

the defendant believed that such contract would not be binding upon it without its signature is of no consequence. It is a general rule of construction of contracts that the language and acts of a party to a contract are to receive such a construction as at the time he supposed the other party would give to them, or such a construction as the other party was fairly justified in giving to them, and he will not, at a later time, be permitted to give them a different operation in consequence of some mental reservation. *Right Printing Co.* v. *Stevens,* 107 Vt. 359, 365, 179 Atl. 209, 100 A.L.R. 528.

Viewing the transaction between the parties from a different aspect, the defendant, by reason of its letter and proposed contract sent to the plaintiff, made plaintiff an offer. The plaintiff, by signing the proposed contract, accepted the offer. The effect of the acceptance by the plaintiff was to make the offer into a binding contract between the parties. *Drew* v. *Ellison,* 60 Vt. 401, 407, 15 Atl. 100, 6 Am. St. Rep. 122; 12 Am. Jur. Contracts, p. 531.

We attach no importance to the contention advanced by the defendant that because, as it claims, the rock which was to be crushed had not been approved by the state until a much later date than that of the signing of the contract by the plaintiff, that an essential subject matter of the contract was missing, necessary for its performance. Taken in the light most favorable to the plaintiff, the evidence on this subject is not as the defendant would have it, nor does it appear that it was a contractual term between the parties. The evidence, considered in the light most favorable to the plaintiff, who was the prevailing party below, fairly and reasonably tends to justify the verdict. No error is found in the denial of the motion of the defendant for a directed verdict by the trial court.

Next for our consideration are exceptions briefed by the defendant to the refusal of the trial court to charge the jury in accordance with six requests to charge made by the defendant at the close of arguments in the case. All such requests to charge had to do with possible damages which might be awarded by the jury and sought instruction by the trial court to the jury that certain items of expense in the matter of equipment and labor, received in evidence, should not be considered by the jury in determining consequential damages.

The court charged that on the question of damages the plaintiff was entitled to recover the profits which would have resulted to them if they had performed the work under the terms of the contract, and

that in addition such further damages as from the evidence the jury might find resulted directly and proximately from the breach of the contract.

■ There are two distinct items which are the primary measure of damages to which one party to a contract is entitled when such party is prevented from the willing performance of the contract by the acts of the other contracting party. One such item is the party's reasonable outlay of expenditure towards performance, less the value of materials on hand, and the other item is the anticipated profits which would have been derived from performance. 25 C.J.S. Damages, pp. 576-577. The wrongdoer must respond for gains prevented as well as losses sustained. *Capital Garage Co.* v. *Powell,* 98 Vt. 303, 309, 127 Atl. 375.

The evidence of the plaintiff was that they had suffered a loss of profits by reason of the contractual breach in the amount of $13,178.00. The plaintiff also claimed consequential damages in the amount of $24,209.00, and it is some of the principal items in these particular damages that the defendant requested the court in its charge to remove from the consideration of the jury.

The defendant's first request was that the court should instruct the jury not to consider the sum of $1,800 paid by the plaintiff in labor charges as an element of damage. The evidence of the plaintiff was that such payments were wages paid to workmen in anticipation of starting work under the contract, but who remained idle for a six-week period because of defendant's refusal to allow performance of the contract.

■ This was an expenditure which the plaintiff had reason to make by reason of its faith in the contract. It was a reasonable outlay toward performance of the contract, and an expenditure made solely for the purpose of performing the contract. It was a damage such as fairly and reasonably may be considered as arising naturally from the breach of the contract itself, and such as may be reasonably supposed to have been in the contemplation of both parties at the time they made the contract. *Hadley* v. *Baxendale,* 156 English Reprint 145, 5 Eng. Rul. Cas. 502; 15 Am. Jur. Damages, p. 451. Defendant's request to the court to charge that such wage payments were subject to the provisions of V.S. 47, §4851 was properly denied. The mandatory wage scales set forth in §4851, in effect at the time the contract

was made, applied only to contractors with the State of Vermont, nor does it set forth the specific wage scales to which the defendant testified. Defendant takes nothing by this exception to the charge below.

The next item which the defendant requested the court to instruct the jury to disregard on the matter of damages was one of $490.00 for alteration of a screen on a stone crusher owned by the plaintiff. The evidence of the plaintiff was that it redesigned a portable screen to serve the purpose of permitting stone only of a certain size to go through it from the crusher. The evidence was that this screen was redesigned for the four-inch minus rock required under the contract. The evidence further was that the matter of so redesigning the screen was not only discussed with the defendant, but that the defendant itself did the work required on the screen and billed the plaintiff for it. The evidence is clear that this was an outlay in anticipation of the contract, made with the full knowledge of the defendant, and hence in the contemplation of the parties under the contract. Defendant takes nothing by this exception.

The next three exceptions by the defendant are to the court's refusal to charge as requested by the defendant to remove from the consideration of the jury on damages certain items relating to a loader and stone crusher. The evidence of the plaintiff was that it owned a loader worth $8,500 at the time of the making of the contract; that after the breach of the contract it was obliged to resell the loader to the company from whom it had purchased it for $6,300 as part of a general refinancing plan made necessary by the plaintiff's inability to meet payments set up at the time of the initial purchase of the equipment.

The evidence of the plaintiff relative to the crusher was that its cost to it was $34,500. After it had made payments of $14,000 on the crusher it was voluntarily turned back to the finance company because of inability to maintain the payments. The value of the crusher at the time of its taking into possession by the finance company was $20,000. Plaintiff's evidence was that at the time it returned the loader to the finance company and refinanced some other equipment with the same company, it had to pay "close-out charges" of $618 "as an inducement" to the finance company to accept the return of the loader.

The evidence is undisputed that both the crusher and the loader were ordered by the plaintiff before it had entered into the contract with the defendant. In fact, the evidence is that the company from whom it bought these pieces of equipment suggested, after such purchase, that the plaintiff contact the defendant on the chance of getting a contract for crushing rock. It was this contact that did result in the contract which is the subject of this litigation.

This evidence makes it plain that the loader and crusher were not bought only for use in the performance of a contract which was not in existence at the time of the purchase. In fact, the equipment was used on other jobs both prior to and subsequent to the contract with the defendant. Nothing in the record indicates that the defendant had any knowledge of the agreement made between the plaintiff and the equipment company relative to the loader and crusher.

■ The general rule is that in an action of contract the damages must be the direct, natural result of the breach, and to have been in the contemplation of the parties when the contract was made as a probable result of such breach. *Greany* v. *McCormick,* 273 Mass. 250, 173 N.E. 411, 412. And while it is not required that the parties actually considered such damages they must be such as the parties may fairly be supposed to have considered. 15 Am. Jur. Damages, p. 455, and cases cited thereunder.

■ Damages resulting to a plaintiff for failure to meet the terms of a contract for the purchase of heavy machinery, made before contractual relations existed with the defendant, and of which agreement defendant had no knowledge, are not the direct and natural results of a breach of a later contract on the part of the defendant under the rule.

While to the plaintiff the fact that it had to make payments of a certain amount to retain possession of a crusher and loader necessary in connection with its work might well have been a special circumstance taken into consideration in making its contractual arrangements with the defendant, it was not a circumstance known to the defendant, nor one which could reasonably be supposed to have been in its contemplation at the time it contracted with the plaintiff. It was a circumstance which was not considered by both parties when the contract was made which was necessary for it to bring it within the rule of damages.

The requests to charge in this respect by the defendant should have been granted by the lower court. The jury verdict in the court below obviously included both loss of profit and special damages in its award. Because the failure of the lower court to exclude the items relating to the crusher and the loader would have a prejudicial effect upon the question of special damages, and the two items of damage are inextricably mixed in the same verdict, a new trial is necessary upon that issue.

It is unnecessary for us, therefore, to consider the defendant's exceptions to the denial of its motion to set aside the verdict as excessive.

*Judgment affirmed except as to the question of damages, and as to that question, judgment is reversed and cause remanded.*