## STEELTECH BUILDING PRODUCTS, INC. *v.* EDWARD SUTT ASSOCIATES, INC., ET AL. (6236)

DUPONT, C. J., O'CONNELL and FOTI, Js.

Submitted on briefs December 12, 1988—decision released May 30, 1989

*Bernard Green* and *Susan C. Webb* filed a brief for the appellants (defendants).

*Dennis C. Cavanaugh* and *Victor N. Morganthaler* filed a brief for the appellee (plaintiff).

O'CONNELL, J. The defendants, Edward Sutt Associates, Inc. (the corporation), and Edward Sutt, individually (Sutt), appeal from the judgment rendered after a trial to the court in an action to recover damages for breach of contract or, in the alternative, under a theory of quantum meruit. They claim that the trial court erred in finding that a contract existed between the parties. In the alternative, they claim that, if there was a contract, the court erred in determining the type and amount of damages recoverable, and in holding the defendant Sutt individually liable. We find no error.

The trial court found that, in response to the defendants' solicitation of bids, the plaintiff's employees John Denton and Kent Hammerlind had met on January 27, 1984, with Sutt and his architect, Roger Braley, at the Southgate Condominium project site to present their written bid of $188,700 for their role in that project. Sutt responded that they were waiting for another bid. He and Braley went into another room and contacted a third party who gave them an oral bid.

Upon returning to Denton and Hammerlind, Braley told them that their price was good and asked that they get started immediately. Denton responded by asking Sutt if they had a deal. Sutt replied, "Yes, it's your job," and they shook hands. Braley, Denton and Hammerlind spent the next one and one-half hours going over the project specifications. During this time, Denton produced a "proposal and contract" form for Sutt to sign. Sutt declined, however, saying that he wanted to examine it over the weekend. As an alternative, he agreed to prepare and sign a letter of intent. Shortly thereafter, Denton and Hammerlind offered to take Sutt and Braley to lunch to celebrate their deal. Sutt declined and said he would have the letter of intent ready when they returned. After lunch, the letter was produced but Sutt was unavailable to sign it. As a result, the parties agreed that it would be mailed to

the plaintiff's office. Upon leaving, Denton and Hammerlind were given a set of drawings and the original copy of the foundation plans for the project.

Shortly after the January 27, 1984 meeting, the plaintiff's structural design engineers commenced preparation of drawings for the defendant's approval. They also reserved a time slot in their steel fabrication shop from the last week in February through the third week in March for the Southgate project in accordance with the timetable agreed upon by the parties.

The parties were in frequent contact between February 1 and February 13, despite Sutt's failure to mail the signed letter of intent or the proposal and contract form. During that time, the plaintiff drew up written plans, which Braley reviewed, and the parties negotiated minor changes to the plans and price adjustments. On February 20, however, Sutt telephoned Denton to say that the plaintiff had lost the job by $7000 to another bidder.

At the conclusion of the trial, the court rendered judgment in favor of the plaintiff awarding it $52,000 for lost profits, general administrative overhead, idle labor and actual labor costs.[1]

In their first claim, the defendants argue that the trial court erred in finding that a contract existed between the parties because the defendants had not signed the plaintiff's proposal and contract form or the letter of intent.

It is a fundamental principle of contract law that the existence and terms of a contract are to be determined from the intent of the parties. *Menard* v. *Gentile,* 7 Conn. App. 211, 213, 508 A.2d 456 (1986). The parties' intentions manifested by their acts and words are

---

[1] The defendants do not challenge the $621.06 award for actual labor costs.

essential to the court's determination of whether a contract was entered into and what its terms were. *Finley* v. *Aetna Life & Casualty Co.,* 202 Conn. 190, 199, 520 A.2d 208 (1987). Whether the parties intended to be bound without signing a formal written document is an inference of fact for the trial court that we will not review unless we find that its conclusion is unreasonable. *Menard* v. *Gentile,* supra, 213. Our examination of the record satisfies us that the trial court's determination that a contract existed was a reasonable conclusion supported by the evidence.

Having found that a contract existed, we now turn to the defendants' claims that the court erred in calculating damages. They argue first that the trial court's finding of $24,900 in lost profits was unsupported by the evidence. In addition, they argue that the separate award of $11,987 for general and administrative overhead expenses is included in the lost profits figure and, in effect, was awarded twice. Last, they argue that the court erred in awarding $14,462 for "idle labor" costs.

At the outset, in a breach of contract action for damages, the aggrieved party is entitled to be placed in the same economic position it would have been in if the contract had been performed. *West Haven Sound Development Corporation* v. *West Haven,* 207 Conn. 308, 317, 541 A.2d 858 (1988); *Beckman* v. *Jalich Homes, Inc.,* 190 Conn. 299, 309, 460 A.2d 488 (1983). Such party may recover lost profits which do not need to be proven by mathematical precision. *West Haven Sound Development Corporation* v. *West Haven,* 201 Conn. 305, 320–21, 514 A.2d 734 (1986); *Southern New England Contracting Co.* v. *State,* 165 Conn. 644, 661, 345 A.2d 550 (1974).

The trial court found that the plaintiff's lost profits totaled $24,900 which included "buy-outs" of materi-

als and services to be performed.[2] The testimony of the plaintiff's chief executive officer and exhibits prepared by its certified public accountant formed the factual basis upon which the court reasonably concluded that the sum equalled the plaintiff's lost profits. Moreover, it clearly established that the plaintiff did not calculate general office and administrative overhead expenses in its lost profits figure. Rather, it presented evidence of these expenses separately. Such evidence amply supports the trial court's award of $11,987. See *Southern New England Contracting Co.* v. *State,* supra, 660–63. Therefore, the defendants' arguments relating to the lost profits award are meritless.

Turning to the defendants' claim concerning the court's award of idle labor costs, they argue that the plaintiff failed to prove that these costs were proximately caused by the defendants' breach and that they were reasonably foreseeable. In addition, they argue that the plaintiff failed to make all reasonable efforts to mitigate such loss.

The trial court found that the plaintiff is a relatively small operation that schedules one job per time slot. In accordance with its contract with the defendants, it reserved four weeks, commencing the last week in February, to complete its portion of this project. As a result of the defendants' breach, the six employees assigned to the project were 67 percent less productive due to the unavailability of a comparable replacement project and the court awarded the plaintiff $14,462 to cover its idle labor costs.

In Connecticut, the recovery of idle labor costs is an issue of first impression. In making this award, the trial court relied on *General Ins. Co.* v. *Hercules Construc-*

---

[2] The "buy-out" figures represent the difference between the plaintiff's costs and the prices it would have charged the defendants.

*tion Co.,* 385 F.2d 13 (8th Cir. 1967). There, the court of appeals upheld an award of overtime wages due to a breach of contract as a natural and foreseeable consequence. Id., 21. *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc.,* 123 Vt. 130, 183 A.2d 230 (1962), is the only other case found that discusses the issue in the present context. In *Norton,* the plaintiff sought to recover $1800 paid to its workers for the six weeks they were idle due to the defendant's refusal to permit performance pursuant to a contract. The Supreme Court of Vermont held that this expenditure was made solely for the purpose of performing the contract. It arose naturally from the breach of the contract and was reasonably within the contemplation of both parties at the time of the making of the contract and, hence, recoverable. Id., 235, citing *Hadley* v. *Baxendale,* 156 Eng. Rep. 145, 9 Ex. 341 (1854).

Here, the defendants claim they should not be held accountable for the plaintiff's idle labor costs merely because it is the plaintiff's policy to pay its employees a forty hour per week salary regardless of the amount of work available. We follow the reasoning in *Norton & Lamphere Construction Co.* v. *Blow & Cote, Inc.,* supra, and disagree with the defendants.

The defendants also argue that the plaintiff cannot recover these damages because it failed to present evidence to prove that it had refused other jobs for the same four week period it had alloted for the Southgate project. Again, we disagree. The plaintiff did not learn of the defendants' breach until February 20, only a few days before it was scheduled to commence work on the Southgate project. Being a small shop incapable of handling more than one job of this type at a time, the plaintiff had no reason to solicit work for this period after contracting with the defendants. Moreover, the record supports the trial court's finding that the plaintiff attempted to mitigate its damages by obtaining work

for this time period but was unsuccessful because comparable projects were difficult to secure at that time of year on such short notice. Nevertheless, the plaintiff assigned whatever work it could find, thus mitigating the defendants' damages by approximately one third.

In view of the facts of this case, the trial court correctly concluded that the plaintiff's idle labor costs were recoverable as a direct result of the defendants' breach.

In their last claim, the defendants argue that the trial court erred in holding Sutt individually liable. In support of this claim, they assert that the court failed to provide a basis for this holding. It is rudimentary law, however, that "[t]he appellant bears the burden of presenting an adequate appellate record. . . . Where the basis of the trial court's decision is unclear, proper utilization of the motion for articulation serves to dispel any ambiguity by clarifying the factual and legal basis upon which the trial court rendered its decision." (Citations omitted.) *Pantlin & Chananie Development Corporation* v. *Hartford Cement & Bldg. Supply Co.*, 196 Conn. 233, 239, 492 A.2d 159 (1985). The defendants' failure to do so precludes us from reviewing this claim.

There is no error.

In this opinion the other judges concurred.