[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff City Point Construction Company Inc. (City Point) was a subcontractor for Kelly Enterprises. Inc. (Kelly) who was remodeling a building in Stamford Connecticut. John Healey Jr. (Healey) the president of City Point, met at the site with the defendant, Anthony Ardito in early June 1995, to discuss a price for the concrete work in the garage of the site. Ardito quoted Healy a price of 50 cents per square foot for a total price of $4500. The oral agreement which is not in dispute called for "9000 a square foot to place finish concrete, place wire mesh and saw cut" (see exhibit A).
On June 8, 1995 Ardito came to the property at 300 Broad Street, Stamford and in accordance with his verbal agreement placed 9000 square feet of concrete on the parking deck. Ardito argues that there is no dispute that the defendant agreed to placing 9000 square feet of "finished concrete." (emphasis added). The defendant however argues that the plaintiff's Complaint alleges that the defendant ". . .failed to properly install and "cure the concrete" (emphasis added).
The plaintiff City Point argues and the defendant agrees, that the court should find that the parties did not discuss who would be responsible for the concrete during the period after placement and prior to saw cutting.
The plaintiff called as its expert Richard DeStefano who deals with concrete products every day.
Ardito relying on his experience, testified that saw cutting is customarily completed within twenty-four hours, so he returned to complete his part of the agreement the next day. From the evidence adduced at trial when Ardito returned to the job the next day, the concrete was already ruined and saw cutting had no purpose other than for Ardito to claim he finished his part of the agreement.
DeStefano defined for the court the term finishing concrete. Finishing concrete connotes set screen (mesh), pour the concrete, edge, come in with a finishing machine while concrete is still wet and moist. DeStefano also defined curing which is a gradual drying process. DeStefano explained saw cutting as a means of controlling cracking. DeStefano testified all concrete has a tendency to crack and although saw cutting usually takes place within twenty four hours, it is not absolute to fix the time. CT Page 7318 Factors to consider when to saw cut depends on temperature and thickness of the concrete. Saw cutting can be much earlier than twenty-four hours. DeStefano opined it would have been a lot earlier in this case to saw cut and he would have waited to see that saw cutting was done. DeStefano stated "Placing and saw cutting means to wait and see".
Ardito immediately after finishing the concrete, left the property at approximately 3:30 p. m. the same day and did not return to the job site until the next morning. He did not advise anyone that he was leaving. At approximately 4:00 p. m. a representative of Kelly noticed the concrete just placed had begun to crack and called City Point immediately in West Haven. By the time City Point was able to get to the site the concrete was in the process of cracking. They tried to flood the concrete with water to prevent further damage. Ardito, when he arrived at the job site had not taken any material or tools for saw cutting. The defendant argues that because he did not take the saw cutting tools the court should draw the inference that he did not expect that the curing process was his responsibility. This court rejects drawing such an inference bearing on his intent.
The defendant argues his first and most important special defense is that he had no obligation to cure the concrete. And that if he was expected to cure it, or had agreed to cure it, his price per square foot would have been higher. His other argument is that he was not responsible to supply or mix the concrete. No evidence was produced that the concrete used was defective or that the price would be higher if steps had to be taken to protect the concrete. The defendant's argument is nothing more than a splitting of hairs by attempting to divide the agreement into two separate processes, i.e. saw cutting and curing of the concrete to reduce the risk of cracking.
Ardito did not testify as to what price he would have charged if he was held responsible for curing. The day Ardito performed his agreement to place and finish the concrete was a very hot day, mid 80 degrees, and very windy. Ardito undertook to perform on a day knowing that the weather Conditions would effect the drying time of the concrete he laid and finished.
Ardito argues that in a construction contract, the intention of the parties is critical. The interpretation of contracts is principally a question of intent of the parties to be determined by the trier of facts, Steeltech Building Products Inc. v. EdwardCT Page 7319Sutt Associates Inc., 18 Conn. App. 469 (citations and internal quotations omitted). The argument that Ardito's action of not bringing his cutting tools shows his intention was that he was not required to cure the concrete is not persuasive.
The Second Count of the plaintiff's complaint alleges that the defendant's installation was negligent, resulting in major cracking and was commercially unacceptable. The Third Count of the complaint also alleges that the concrete placed and finished by the defendant was commercially unacceptable.
The plaintiff argues in accordance with Scribner v. O'Brien,169 Conn. 389, that City Point has proven that the defendant Ardito was negligent in that he failed to exercise that degree of care which a skilled contractor, as is Ardito in this case, would have exercised under similar conditions
Ardito knew the day was hot and windy and that the concrete would dry fast, yet he took no precaution to prevent cracking. Without notice to any of his parties, he packed up his tools and left the job to return the next day to perform the futile act of saw cutting. As DeStefano stated, he failed to follow customary precautions to prevent cracking. In effect he totally disregarded the standard of care that a prudent skilled contractor would have exercised under these circumstances. DeStefano testified that Ardito had an obligation to wait and see judging from the weather conditions that day to take necessary steps to reduce the risks of cracking. The plaintiff in this case established that the defendant fell below the standard of care in the industry. The defendant provided no expert testimony for this court to dispute the expertise offered by the plaintiff. See Scribner supra.
DeStefano testified it was the custom of the trade to wait and see. It is the responsibility of Ardito to keep the concrete under control. DeStefano stated a reasonably prudent contractor would have gotten in the saw cutting especially knowing it was drying out by 4:00 p. m. the plaintiff made an attempt to reduce the cracking by wetting me concrete up to 8:00 p. m. that evening. DeStefano stated that he would not have left the job under the circumstances and should have at least notified the plaintiff. Overall curing process does not dictate saw cutting.
DeStefano further stated that he might have poured and finished a smaller area and that three inches of concrete was adequate for what that structure was meant to be. Gerald Blank, CT Page 7320 (Blank) Vice President of Kelly was the project manager. Kelly was aware that City Point was subcontracting part of its work. Kelly received the call from the owner at 4:15 p. m. that the concrete was cracking. Kelly, his father and brother went directly to the project arriving at about 4:30 — 4:45 p. m. that evening.
They took measures to water down the concrete when City Point joined them at 5:15 p. m. They all worked up to 8:00 p. m. When they left the concrete was cracking and spider cracking. The next mourning there was quite a bit of cracking. Blank testified he had experience in placing concrete and that saw cutting is placed in concrete as a control for cracking. He testifies concrete should be saw cut within twenty four hours or prior to concrete becoming hard. Blank testifies that in his experience the defendant had to watch because he was responsible for the job project. Blank testified that Ardito having completed his work at 3:30 p. m. he should have stayed and watched the hardening process determine when saw cutting should be done. Blank testified as to the billing to correct the job in the amount of $17,574.00.
Ardito in his defense has failed to prove that although he did not have he specific responsibility to cure the concrete, it did not relieve him of the responsibility to finish the concrete and saw cut with the degree of care of a skilled worker with concrete. His second defense is also unavailing that three inches of concrete was not enough in this case.
The court concludes from all the evidence adduced at trial that the defendant Ardito was negligent in that he failed to saw cut the concrete when it became necessary and that he failed to exercise the degree of care which a skilled tradesman in laying concrete would have exercised under the circumstances.
The court finds in favor of the plaintiff on all three counts of the complaint and on the counterclaim
The plaintiff is awarded the cost to repair in the amount of $17,574.33 plus $4500, the return of the escrow, for a total of $22,074.33.
Frank S. Meadow Judge Trial Referee CT Page 7321