# A. Brown, Inc. v. The Vermont Justin Corp.

[531 A.2d 899]

No. 85-337

Present: Allen, C.J., Peck, J., and Barney, C.J. (Ret.), Specially
Assigned

Opinion Filed June 19, 1987

*Carl H. Lisman* and *Mary G. Kirkpatrick* of *Lisman & Lisman*, Burlington, for Plaintiff-Appellee.

*Lynch & Foley, P.C.*, Middlebury, for Defendant-Appellant.

**Barney, C.J.** (Ret.), Specially Assigned. The plaintiff, A. Brown, Inc., was a tenant of the defendant, the Vermont Justin Corp., between January, 1978, and October, 1983. This lawsuit relates to damages claimed by the tenant from a leaking roof during that period. The trial court found in favor of the plaintiff for $24,500 in damages, counterbalanced by an agreed recovery by the defendant of $1,238.48 for past due property taxes owed on a different leased property. The defendant challenges the sufficiency of the evidence to prove any liability or damage. We affirm.

The facts found by the trial court begin with the lease of premises owned by the defendant in Morrisville, Vermont to the plaintiff for a term of fifteen years, renewable upon the exercise of an option to do so. All exterior and structural repairs were the responsibility of the landlord, and interior repairs, including plumbing and heating, were the tenant's.

The plaintiff company dealt with, among other things, appliances such as washers, dryers, refrigerators and ranges. It also sold televisions, stereo record players, radios and sporting firearms.

According to the findings, in 1977, just before the defendant became an assignee of the lease and the plaintiff's landlord, the plaintiff repaired and renovated the interior of the premises at a cost of more than $18,000. In early 1978 the parties discussed exterior repairs, and the plaintiff informed the defendant that the roof leaked. In March of 1978, and again in April, the plaintiff reminded the defendant of the need for roof repairs. In August some repairs were done to the roof, but the leaking continued.

The plaintiff continued to request repairs through telephone calls to the defendant, but no further repairs were done until May, 1979, when a television antenna hole was patched and roofing material applied to a small area. Again, the repairs did not solve the problem.

In the fall of 1980, the interior ceiling panels and insulation came down in the showroom. Located on the showroom floor at the time of collapse were an estimated ten refrigerators, six or

eight washers and dryers, eight ranges, four freezers, two dishwashers, fifteen color televisions, ten to twelve portable color televisions, nine stereos, twelve radios and twelve black and white televisions. The result was damage to these units in the form of nicks and scratches, together with water on the floor. Additionally, water from the leaking roof damaged a furnace requiring its replacement.

The findings reported that the injuries to the appliances required markdowns which reduced the regular profit on those items by a total of $5,000. The new furnace cost $2,500. The clean-up expenses were $2,000, and interior repairs came to $10,000. The damage and repairs required that the business be closed between two and three weeks at a loss in gross sales of $10,000. With evidence that the average net profit over the years was 20%, the court found that the shutdown represented a $2,000 loss in profit.

The plaintiff notified the defendant by phone of the collapse and later face to face. The defendant failed to repair the roof, even with continued verbal and written notices, claiming that its predecessor should have done it.

Between 1980 and 1983 leaks caused further damage to the interior and required, in 1983, another furnace replacement. This one cost $3,000. In October of 1983 the lease was assigned to a new owner who repaired the roof. Other issues were discussed in the findings, but they are not relevant to this appeal.

■ The defendant faults the trial court's determination that the failure of the defendant to repair the roof was the probable cause of the harm. It contends that such a conclusion was not supported by the evidence. In reviewing that issue, the standard for evaluating findings as to whether or not the evidence is sufficient to support them is that the evidence must be reviewed in the light most favorable to the prevailing party, excluding any modifying evidence. If there is any credible evidence fairly and reasonably tending to support the findings they will stand. *Collins v. Boudreau*, 141 Vt. 129, 131, 446 A.2d 341, 342 (1982). To be set aside, they must be demonstrated to be clearly erroneous. V.R.C.P. 52(a). It is the function of the trier of fact, in this case, the court, to determine the credibility of the witnesses and the weight to be given their testimony. The trier is bound to carry out that function judiciously and impartially. See *Gramatan Home*

*Investors Corp.* v. *Starling*, 143 Vt. 527, 532, 470 A.2d 1157, 1160 (1983).

Certainly, in this case, evidence of causation was there. The defendant does argue that the fact that the plaintiff's chief executive officer used the expression, "I can speculate" in describing the collapse of the ceiling and its probable cause means that his evidence is, in the legal sense, "speculative." It must be pointed out that if this were an expert witness called in to give an opinion on causation, the difference between "speculative" and "more probable than not" might be significant. See *Campbell* v. *Heinrich Savelberg, Inc.*, 139 Vt. 31, 34-35, 421 A.2d 1291, 1293 (1980).

But here the witness was testifying in connection with the scene that met his eyes that morning when he was called to the store on account of the ceiling collapse. He testified that all of the ceiling panels except at the edges, all the insulation, and the steel supports all came down and there was water on the floor. His questioned answer was:

> I can speculate. I think just because of what happened was water from the leak or the roof leaking, water came in, saturated the insulation and saturated the ceiling tiles and it just all came down.

It seems plain that he is using the qualifier simply because he did not, and could not, see the actual process of collapse and categorically define it. It was proper for the trier of fact to view his evidence in that light in determining his credibility. See *Herrick* v. *Town of Holland*, 83 Vt. 502, 512, 77 A. 6, 9-10 (1910). Taking all of the evidence together, the court correctly found probable cause established.

The defendant makes an argument as to insufficiency of notice of the leaking roof. This is one of the few issues on which the defendant adduced any countervailing evidence to the plaintiff's case, but since that evidence was in conflict, the issue of notice was properly for the trial court to determine. *Trudeau* v. *Conway*, 139 Vt. 167, 168, 423 A.2d 854, 855-56 (1980). The trial court's findings in this particular must stand.

The defendant argues that because the trial court failed to make a finding that the losses that occurred fell within the contemplation of the contracting parties reversal is required. Our law divides damages from breach of contract in two parts. First are

those damages for losses that naturally and usually flow from the breach itself. *Norton & Lamphere Construction Co* v. *Blow & Cote, Inc.*, 123 Vt. 130, 138, 183 A.2d 230, 236 (1962). It is not required that the parties actually considered such damages, but they must be such as the parties may fairly be supposed to have considered. *Id.* Second are the special, sometimes referred to as consequential, damages that must pass the tests of causation, certainty and foreseeability, and, in addition, be reasonably supposed to have been in the contemplation of both parties at the time they made the contract. *Albright* v. *Fish*, 138 Vt. 585, 590, 422 A.2d 250, 254 (1980). Some of these special or consequential damages may fall outside the limits of recovery unless it can be found as a fact that they were, in fact, contemplated by the parties.

That is not this case. The damages here are sufficiently directly related to the breach as to be held to be with the reasonable contemplation of the makers of such a contract. There is no shortcoming established here.

The defendant corporation argues that there was a failure to prove damages in this case and therefore, on that account, under *Dufresne-Henry Engineering Corp.* v. *Gilcris Enterprises, Inc.*, 136 Vt. 274, 277, 388 A.2d 416, 418-19 (1978), the plaintiff's action should be dismissed and judgment entered for the defendant. Unlike the case before us, the cited case involved no evidence of damage whatsoever, whereas here the plaintiff's officials in their testimony did put a monetary value on the harm done, appropriate under 12 V.S.A. § 1604. *O'Bryan Construction Co.* v. *Boise Cascade Corp.*, 139 Vt. 81, 90, 424 A.2d 244, 248-49 (1980).

The defendant then points to language in *G & H Holding Co.* v. *Dutton*, 118 Vt. 406, 411-12, 110 A.2d 724, 728 (1955), as requiring that when damages are "capable of being estimated by a strict money standard, the plaintiff must give evidence thereof in dollars and cents." This is not a rule demanding proof to the precise penny, as defendant would have it. Taken in the context of the cited case it is merely distinguishing between those cases where damages can be measured in money and those cases which call for the trier of fact to translate inchoate qualities into dollar damages.

■ Here we do have damages expressed in dollars, coming from qualified witnesses. The shortcoming, if it is one, that the defendant is really attacking is of two kinds: (1) the damage figures are

approximations or estimates, and (2) there are no documents proffered to back them up. These are not absences of evidence but, again, reflections on the weight of the evidence. *Fox* v. *McLain*, 142 Vt. 11, 14, 451 A.2d 1122, 1123 (1982); see also *Teitle* v. *London & Lancashire Insurance Co.*, 116 Vt. 228, 73 A.2d 300 (1950). No independent evidence was advanced by the defendant to show that the plaintiff's damage testimony was deficient or erroneous. The trial court's evaluation of that evidence as reflected in the findings and judgment is within that court's responsibility for decision. *Spaulding* v. *Cahill*, 146 Vt. 386, 390, 505 A.2d 1186, 1188 (1985).

*Judgment affirmed.*