## Tour Costa Rica v. Country Walkers, Inc., et al.

[758 A.2d 795]

No. 98-421

Present: **Dooley, Morse, Johnson and Skoglund, JJ., and Gibson, J. (Ret.), Specially Assigned**

Opinion Filed July 28, 2000

*John L. Pacht* and *Kerin E. Stackpole* of *Hoff, Curtis, Pacht, Cassidy and Frame, P.C.*, Burlington, for Plaintiff-Appellee.

*Erik B. FitzPatrick* and *Robert F. O'Neill* of *Gravel and Shea*, Burlington, for Defendants-Appellants.

**Skoglund, J.** Defendants Country Walkers, Inc. (CW) and Robert Maynard (Maynard)[1] appeal from the superior court's denial of their V.R.C.P. 50(b) motion for judgment as a matter of law, following a jury verdict for plaintiff, Tour Costa Rica (TCR), on its promissory estoppel claim. The jury awarded plaintiff, a company that runs tours in Costa Rica, damages after finding that defendant had breached a promise of a two-year commitment to use TCR to develop, organize and operate Costa Rican walking tours for defendant during that period. We affirm.

---

[1] CW and its owner, Maynard, are hereinafter referred to collectively as "defendant."

Because this is an appeal from a denial of a motion for judgment as a matter of law, we view the evidence in the light most favorable to plaintiff. See *Brueckner v. Norwich Univ.*, 169 Vt. 118, 120-21, 730 A.2d 1086, 1089 (1999).

CW is a Vermont business, owned by Maynard and his wife, that sells guided tours at locations around the world. In 1994, Leigh Monahan, owner of TCR, contacted Maynard and offered to design, arrange and lead walking tours in Costa Rica for defendant. During negotiations, Monahan explained to Maynard that she had just incorporated the tour company and, because the company had limited resources, she could not afford to develop specialized tours for defendant unless she had a two-year commitment from CW to run its Costa Rican tours through TCR. In the summer of 1994, the parties entered into a verbal agreement under which plaintiff was to design, arrange and lead customized walking tours in Costa Rica for CW from 1995 through 1997. Pursuant to this agreement, Monahan designed a customized tour for CW, a task that included investigating and testing walking tours, investigating and booking hotels, making transportation arrangements, conducting research, checking medical facilities, writing and editing copy for CW's brochures and drafting itineraries for clients.

In March and April 1995, plaintiff conducted two walking tours for CW. Although other tours had been scheduled for 1995, both defendant and plaintiff canceled some for various reasons. Between the end of April and June of 1995, the parties discussed the details of, and scheduled the dates for, approximately eighteen walking tours for 1996 and 1997. Due to limited resources, plaintiff could not conduct tours for anyone else while working with defendant and, therefore, stopped advertising and promoting its business, did not pursue other business opportunities and, in fact, turned down other business during this period.

In August 1995, a few weeks before the next tour was to occur, defendant informed plaintiff that it would be using another company for all of its future tours in Costa Rica. When challenged by plaintiff with its promised commitment, Maynard responded: "If I did and I certainly may have promised you a two year commitment, I apologize for not honoring it." Notwithstanding this apology, defendant went on to operate tours in Costa Rica using a rival company. Plaintiff was forced to cancel transportation arrangements and hotel and restaurant reservations it had made on defendant's behalf. Due to the suddenness of the break with CW, plaintiff was left without tours to

run during a prime tourist season, and without sufficient time to market any new tours of its own.

Plaintiff filed suit against defendant, alleging breach of contract, promissory estoppel, unjust enrichment, conversion, fraud, and breach of covenant of good faith and fair dealing. Plaintiff dismissed the conversion count at the beginning of trial. At the close of plaintiff's evidence, defendant moved for a directed verdict on the remaining counts. The court granted defendant's motion with respect to the fraud claim, but denied it with respect to the other claims. Defendant renewed its motion at the close of all the evidence, and the court denied it. At that time, defendant also requested a directed verdict with regard to damages, arguing that there was insufficient evidence to support a damage award. The court denied this motion, as well. Subsequently, the court presented the parties with its proposed jury instructions, which included the following: "As to the claims of breach of contract and promissory estoppel, plaintiff would be entitled to damages which would put it in the same position as if the contract or promise had been fulfilled by Country Walkers." The court then held a jury charge conference, during which both plaintiff and defendant objected to portions of the court's proposed instructions. Defendant, however, did not object to the above-quoted portion.

The case went to the jury, and the jury found for defendant on the breach of contract, unjust enrichment, and breach of covenant of good faith and fair dealing claims, but found for plaintiff on the promissory estoppel claim, and awarded expectation damages in the amount of $22,520.00. Defendant then filed a motion for judgment as a matter of law, alleging, as it had in its previous motions, that plaintiff had failed to prove promissory estoppel and that there was insufficient evidence to support the jury's damage award. Defendant also argued, for the first time, that, as a matter of law, expectation damages are not available in a promissory estoppel action. The court denied defendant's motion. This appeal followed.

Pursuant to V.R.C.P. 50, a court may grant judgment as a matter of law where "there is no legally sufficient evidentiary basis for a reasonable jury to find for [the nonmoving] party." V.R.C.P. 50(a)(1). When reviewing a motion for judgment as a matter of law, we view the evidence in the light most favorable to the nonmoving party, excluding the effect of any modifying evidence, in order to determine whether the result reached by the jury is sound in law on the evidence produced. See *Haynes v. Golub Corp.*, 166 Vt. 228, 233, 692 A.2d 377, 380 (1997); *Foote v. Simmonds Precision Prods. Co.*, 158 Vt. 566, 570,

613 A.2d 1277, 1279 (1992). The trial court's denial of such motion will be upheld "if any evidence fairly or reasonably supports a lawful theory of the plaintiff." *Haynes*, 166 Vt. at 233, 692 A.2d at 380. In this case, there was substantial evidence supporting plaintiff's claims, and the trial court did not err in denying defendant's motion for judgment as a matter of law.

## I.

Defendant first argues that plaintiff failed to make out a prima facie case of promissory estoppel. Under the doctrine of promissory estoppel:

> "A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

*Foote*, 158 Vt. at 573, 613 A.2d at 1281 (quoting Restatement (Second) of Contracts § 90(1) (1981)). The action or inaction taken in reliance on the promise must be "'of a definite and substantial character.'" *Ragosta v. Wilder*, 156 Vt. 390, 396, 592 A.2d 367, 371 (1991) (quoting *Stacy v. Merchants Bank*, 144 Vt. 515, 521, 482 A.2d 61, 64 (1984)). In other words, the promisee must have detrimentally relied on the promise. See *Larose v. Agway, Inc.*, 147 Vt. 1, 4, 508 A.2d 1364, 1366 (1986), *overruled on other grounds by Taylor v. National Life Ins. Co.*, 161 Vt. 457, 652 A.2d 466 (1993). Defendant does not seriously dispute that there was a promise or that plaintiff did take action based on the promise. Rather, defendant argues that plaintiff's reliance was not reasonable or detrimental, and that this is not a case where injustice can be avoided only by enforcement of the promise. We first address defendant's argument that plaintiff's reliance was not reasonable.

## A.

In determining whether a plaintiff reasonably relied on a defendant's promise, courts examine the totality of the circumstances. See *In re Bonnanzio*, 91 F.3d 296, 305 (2d Cir. 1996). Here, plaintiff presented evidence that it relied on defendant's promise of a two-year exclusive commitment by (a) ceasing to advertise and promote the business, failing to pursue other business opportunities, and turning

down other business; (b) making hotel and restaurant reservations and arranging for transportation for the tours it was to operate for CW; and (c) making purchases related to the tours it was to operate for CW. Plaintiff suggests that this reliance was reasonable because, in negotiations with Maynard, plaintiff made clear that it required a two-year commitment due to its limited resources, the time it would have to devote to develop specialized tours for CW, and the ongoing communication between the parties as to future dates and requirements for tours.

Defendant argues that plaintiff's reliance was not reasonable based solely on standard industry practice that permits the cancellation of tours upon thirty to sixty days' notice.

While there was no dispute that tours could be canceled with appropriate notice, there was evidence that this industry practice did not apply to the parties' two-year commitment. Monahan testified that she and Maynard specifically agreed to the two-year time frame because she wanted a measure of security for her fledgling company. She further testified that it was her understanding, from negotiations with Maynard, that the two-year commitment was unaffected by the possibility that some scheduled tours might be canceled if, for example, too few people signed. This understanding finds support in Maynard's proposed method of handling deposits of people who canceled tour bookings: if guests canceled more than sixty days before the trip, defendant would keep $50.00 of the deposit; if the cancellation was made less than sixty but more than thirty days prior to the trip, defendant and plaintiff would split the deposit; and, if the cancellation was made less than thirty days before the trip, plaintiff would be paid the full amount of the deposit.

Based on the foregoing, we find that plaintiff presented sufficient evidence to enable the jury to conclude that plaintiff's reliance on defendant's promise was reasonable.[2]

---

[2] Defendant also argues that, at trial, Monahan acknowledged that promises of exclusivity are meaningless without a binding contract, and therefore, because the jury found for defendant on the contract claim, defendant's promise was ineffectual. Defendant's argument, however, is flawed for two reasons. First, in reviewing a motion for judgment as a matter of law, we view the evidence in the light most favorable to the plaintiff, excluding modifying evidence. Defendant's proffered evidence is modifying evidence and cannot be considered. Second, even if we could consider this evidence, the trial transcript does not support defendant's assertion.

## B.

Defendant next argues that plaintiff's reliance on defendant's promise was not detrimental. Defendant suggests that the only evidence of detriment offered by plaintiff was Monahan's testimony concerning expenses for a few minor equipment purchases. Plaintiff disagrees.

Plaintiff maintains that its reliance was detrimental because (1) it lost business due to the fact that (a) it stopped advertising and promoting the business, did not pursue other business opportunities, and turned down other business in reliance on the parties' agreement, and (b) after defendant breached the agreement, plaintiff had no money to advertise or conduct other tours; (2) it spent money in preparation for the tours it was to operate for defendant; and (3) its reputation in the industry suffered because it had to cancel two-years' worth of reservations it had made on behalf of defendant.

Defendant does not dispute that plaintiff stopped advertising and promoting the business, did not pursue other business opportunities and turned down other business, or that plaintiff's reputation was harmed. Instead, defendant contends that (1) plaintiff would have had to arrange for transportation and make reservations at hotels and restaurants for any tours it arranged for CW, whether or not the tours were part of an exclusive two-year arrangement, and (2) the money plaintiff spent in preparation for the tours is not, in and of itself, sufficient to show detrimental reliance.

Defendant's first argument is flawed because, as noted above, Monahan testified that she told Maynard that plaintiff could not afford to arrange tours for CW without an exclusive two-year agreement. There was no evidence that plaintiff would have prepared tours for CW if the parties did not have an exclusive two-year agreement. Defendant's second argument is flawed because it overlooks the facts that plaintiff stopped advertising and promoting the business, did not pursue other business opportunities, and in fact turned down other business. In reliance on a two-year commitment, plaintiff stopped soliciting business from other sources and declined other bookings, a substantial change in position for a fledgling tour business. See *Ragosta*, 156 Vt. at 396, 592 A.2d at 371. Further, plaintiff's reputation in Costa Rica's tourism industry was damaged.

█ The evidence shows that, as a result of defendant's breach of the parties' agreement, plaintiff suffered significant harm for each of the above-mentioned reasons. Accordingly, the jury could reasonably

conclude that plaintiff's reliance on defendant's promise was detrimental.

## C.

Whether injustice can be avoided only by enforcement of the promise[3] is a question of law[4] informed by several factors, including:

(a) the availability and adequacy of other remedies, particularly cancellation and restitution;

(b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance; [and]

(e) the extent to which the action or forbearance was foreseeable by the promisor.

Restatement (Second) of Contracts § 139(2) (1981).

■ With regard to the availability and adequacy of other remedies, we have previously stated that, "[w]hile a full range of legal damages may be available, promissory estoppel plaintiffs are not necessarily entitled to them as of right." *Remes v. Nordic Group, Inc.*, 169 Vt. 37, 41, 726 A.2d 77, 79-80 (1999). Damages available in a promissory estoppel action depend upon the circumstances of the case. See *id.* While the jury in the instant case found no contract, an analysis of breach-of-contract remedies is relevant to the determination of whether injustice can be avoided only by enforcement of the promise. We do not, however, intend to suggest "that promissory estoppel

---

[3] We do not literally apply the term "enforcement of the promise." To do so would mean the only remedy available in a promissory estoppel case is specific performance. We have never so held. See *Foote*, 158 Vt. at 573-74, 613 A.2d at 1281 (stating promissory estoppel applies "if injustice can be avoided only by enforcement of the promise," concluding there was sufficient evidence for jury to make finding of promissory estoppel, and upholding jury's damage award in case where plaintiff had been wrongfully discharged); cf. *Remes v. Nordic Group, Inc.*, 169 Vt. 37, 41, 726 A.2d 77, 80 (1999) ("promissory estoppel damages should be discretely designed as corrective relief to rectify the wrong committed in a particular case").

[4] Although this is a question of law, we apply the standard of review previously articulated: whether, viewing the evidence in the light most favorable to plaintiff, and excluding modifying evidence, the jury's conclusion is sound in law on the evidence produced.

damages are coextensive with full contractual remedies." *Id.* at 40, 726 A.2d at 79.

Expectation damages, which the jury awarded in this case, provide the plaintiff with an amount equal to the benefit of the parties' bargain. One potential component of expectation damages is loss of future profits. The purpose of expectation damages is to "put the non-breaching party in the same position it would have been [in] had the contract been fully performed." *McKinley Allsopp, Inc. v. Jetborne Int'l, Inc.*, No. 89 CIV. 1489 (PNL), 1990 WL 138959 at *8 (S.D.N.Y. Sept. 19, 1990). Restitution damages seek to compensate the plaintiff for any benefit it conferred upon the defendant as a result of the parties' contract. The purpose of restitution damages is to return the plaintiff to the position it held before the parties' contract. See *id.* Reliance damages give the plaintiff any reasonably foreseeable costs incurred in reliance on the contract. As with restitution, the purpose of reliance damages is to return the plaintiff to the position it was in prior to the parties' contract. See *id.*

Restitution damages are inapplicable in the instant case because there is no evidence that plaintiff conferred any benefit on defendant as a result of defendant's promise. Further, cancellation is inapplicable, as defendant had already breached its promise, and cancellation would provide no remedy for plaintiff. Reliance damages are also inappropriate because the majority of the harm plaintiff suffered was not expenditures it made in reliance on defendant's promise, but rather, lost profits from the tours it had scheduled with defendant, lost potential profits because it failed to pursue other business opportunities, and harm to its reputation. Therefore, an award of expectation damages is the only remedy that adequately compensates plaintiff for the harm it suffered.

As to the other factors considered, plaintiff's actions and inactions were of a definite and substantial character. These actions and inactions strongly corroborate both Monahan's and Maynard's testimony, as well as documentary evidence submitted by plaintiff, regarding the making and terms of the promise. As previously discussed, plaintiff's reliance on defendant's promise was reasonable, and plaintiff's actions and inactions were foreseeable by defendant. Defendant expected plaintiff to take specific actions on defendant's behalf and to design and conduct tours to defendant's specifications. Further, defendant was aware that plaintiff was a new company without a lot of capital, and that it was spending much of that capital preparing tours for defendant.

██ Taking the above factors into consideration, there was sufficient evidence to allow the jury to conclude that, in this case, injustice could be avoided only by enforcement of the promise through an award of monetary damages.

## II.

Next, defendant argues that, as a matter of law, expectation damages are not available in a promissory estoppel case. According to defendant, only reliance damages are available in such cases. Plaintiff, however, notes that, although defendant had the opportunity to object to the jury instructions and raise this argument earlier, it failed to raise the issue until its post-judgment motion for judgment as a matter of law. Consequently, plaintiff contends, defendant waived the right to appeal this issue. We agree.

V.R.C.P. 50(a)(2) provides: "Motions for judgment as a matter of law may be made *at any time before submission of the case to the jury*. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to judgment." V.R.C.P. 50(a)(2) (emphasis added). V.R.C.P. 50(b) provides: "Such a motion may be renewed by service and filing not later than 10 days after entry of judgment. Renewal of the motion is necessary to appeal from a denial of or a failure to grant a motion for judgment as a matter of law." V.R.C.P. 50(b).

██ As noted, in its instructions to the jury, the trial court stated that, if the jury found for plaintiff on the promissory estoppel claim, it could award expectation damages.[5] Prior to giving instructions to the jury, the court held a conference during which both plaintiff and defendant objected to portions of the proposed instructions. Defendant failed to object, however, either at the charge conference or after the court charged the jury, to the instruction that allowed the jury to award expectation damages. Thus, defendant waived the right to appeal this issue. See *Nelson v. Percy*, 149 Vt. 168, 171, 540 A.2d 1035, 1037 (1987) (defendant waived right to raise issue because he raised it for first time in motion for judgment as matter of law).[6] Defendant's

---

[5] Specifically, the court stated: "As to the claims of breach of contract and promissory estoppel, Plaintiff would be entitled to damages which would put it in the same position as if the contract or promise had been fulfilled by Country Walkers."

[6] Defendant cites *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988), for the contention that "'the failure to object to an instruction does not render the instruction the "law of the case" for purposes of appellate review of the denial of a directed verdict or

attempt to create a right of appeal through a Rule 50(b) motion fails, as well, due to its failure to seek a ruling from the trial court, by a prejudgment motion, regarding the remedies available in a promissory estoppel claim.

## III.

Finally, defendant argues that the evidence was insufficient to support the damage award. It contends that plaintiff was required, and failed, to prove what its actual expenses would have been for the tours that were canceled and that, because plaintiff did not produce evidence of its costs, the jury was forced to speculate in calculating the damage award.

On appeal from a jury's damage award, we view the evidence in the light most favorable to the prevailing party, excluding any modifying evidence, in order to determine whether the award was clearly erroneous. See *Brueckner*, 169 Vt. at 127, 730 A.2d at 1093-94.

Defendant first argues that the award was clearly erroneous because plaintiff was required to introduce evidence of what the actual expenses would have been for the canceled tours, but failed to do so, relying on *G & H Holding Co. v. Dutton*, 118 Vt. 406, 110 A.2d 724 (1955). According to defendant, because plaintiff had already arranged for transportation and reserved hotels and restaurants, costs for the tours were readily available.

Defendant misreads our holding in *Dutton*. That case does not stand for the proposition that, in all cases, plaintiffs must produce precise evidence of their actual expenses. In *Dutton*, we stated: "Where the character of the damages is such as to be capable of being estimated by a strict money standard, the plaintiff must give evidence thereof in dollars and cents." *Id.* at 411-12, 110 A.2d at 728. In explaining this rule, we subsequently stated: "This is not a rule demanding proof to the precise penny, as defendant would have

---

judgment notwithstanding the verdict.'" *Id.* at 120 (quoting *City of Springfield v. Kibbe*, 480 U.S. 257, 264 (1987)). In *Praprotnik*, however, although the petitioner had failed to object to a portion of the jury instruction, he had raised the same issue in a pretrial motion for summary judgment, a motion for directed verdict at the close of the respondent's case, a motion for directed verdict at the close of all the evidence, and a post-judgment motion for judgment as a matter of law. Thus, *Praprotnik* is inapposite. See *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 154, 761 A.2d 688, 695-96 (2000) ("defendants sought a judgment as a matter of law on the punitive damages issue in compliance with V.R.C.P. 50(a), and renewed their motion after entry of judgment as required by Rule 50(b). These motions preserved the issue for appellate review, whether or not defendants also objected to the jury instruction.").

it. . . . [I]t is merely distinguishing between those cases where damages can be measured in money and those cases which call for the trier of fact to translate inchoate qualities into dollar damages." *A. Brown, Inc. v. Vermont Justin Corp.*, 148 Vt. 192, 196, 531 A.2d 899, 902 (1987). Defendant has not cited, and we cannot find, any case that supports its contention that plaintiff was required to produce precise evidence of the expenses it would have incurred had the twelve tours gone forward.

■ Here, plaintiff presented evidence of its costs for the two trips that it conducted for defendant, and it presented evidence of how much it was to be paid for the twelve trips that were canceled when defendant breached the parties' agreement. Plaintiff requested $68,000 in damages, the approximate value of twelve tours, with fourteen participants per tour — the average number of participants that had been on the two tours that plaintiff conducted for defendant — minus the estimated costs associated with running those tours. The jury's award of $22,520 reflected the profit value of approximately twelve tours with ten participants per tour, the average number of participants that had participated in CW's Costa Rican tours after defendant breached the parties' agreement.

Moreover, as plaintiff notes, it could not provide precise data for the twelve canceled tours because, as Monahan testified, circumstances, and therefore prices, were subject to change at any time.

■ Defendant further argues that the documents plaintiff submitted to prove its damages were insufficient because they excluded some expenses, leaving the jury to speculate when calculating damages. Defendant had ample opportunity, however, to cross-examine, or present independent evidence, on this issue. As we noted in *Brown*, the fact that "the damage figures are approximations or estimates" is a reflection of the weight, not the sufficiency, of the evidence. *Id.* at 196-97, 531 A.2d at 902. The jury's damage award was not clearly erroneous.

*Affirmed.*