2007 VT 37

# EBWS, LLC v. Britly Corporation

[928 A.2d 497]

No. 05-449

Present: Reiber, C.J., Dooley, Johnson and Skoglund, JJ., and Allen, C.J. (Ret.), Specially Assigned

Opinion Filed May 25, 2007

*William L. Durrell* and *David R. Bookchin* of *Benjamin, Bookchin, Colburn & Durrell, P.C.*, Montpelier, for Plaintiff-Appellee/Cross-Appellant.

*Thomas M. Higgins* and *Robin Ober Cooley* of *Pierson Wadhams Quinn Yates & Coffin*, Burlington, for Defendant-Appellant/Cross-Appellee.

¶ 1. **Reiber, C.J.** This dispute arises from a construction contract in which defendant Britly Corporation agreed to build a creamery for plaintiff EBWS, LLC. After EBWS filed suit for alleged defects in construction, the superior court granted summary judgment for Britly on EBWS's claims of consumer fraud and negligence. Following a trial on the remaining claims, a jury awarded EBWS direct and consequential damages for breach of contract and breach of an express warranty. Both parties now appeal. Britly claims that the superior court erred in admitting evidence of consequential damages and by denying its motion for a new trial. In its cross-appeal, EBWS argues that the court erred in granting summary judgment on its consumer fraud and negligence claims, and by denying its request for attorney's fees, costs and prejudgment interest. We conclude that the court erred in allowing consequential damages in this case, and remand for further consideration of attorney's fees. In all other respects, we affirm.

¶ 2. The Ransom family owns Rock Bottom Farm in Strafford, Vermont, where Earl Ransom owns a dairy herd and operates an organic dairy farm. In 2000, the Ransoms decided to build a creamery on-site to process their milk and formed EBWS to operate the dairy-processing plant and to market the plant's products. In July 2000, Earl Ransom, on behalf of EBWS, met with Britly's president, Larry Tassinari, to discuss building the creamery. Although Tassinari has no formal training in architecture or building design, he has been in the construction business for twenty-eight years and over the last ten years has constructed an average of five commercial buildings per year. After

several months of negotiations, in January 2001, EBWS and Britly entered into a contract requiring Britly to construct a creamery building for EBWS in exchange for $160,318. EBWS contracted directly with other entities to perform the site work, electrical, heating and plumbing on the building. The creamery was substantially completed by April 15, 2001, and EBWS moved in soon afterward. On June 5, 2001, EBWS notified Britly of alleged defects in construction.

¶ 3. On September 12, 2001, EBWS filed suit against Britly for damages resulting from defective design and construction. The complaint included several causes of action: (1) negligent design and execution, (2) negligent supervision, (3) consumer fraud, (4) breach of express warranties, (5) breach of contract, (6) breach of fiduciary duty, and (7) unjust enrichment. Britly claimed that the defects were minor and not attributable to its work. In addition, Britly counterclaimed for breach of contract and unjust enrichment.

¶ 4. In response to opposing motions for summary judgment, the trial court dismissed EBWS's consumer fraud claim on January 5, 2004. The court also issued a show cause order for EBWS to demonstrate why its negligence claims should not be dismissed as a matter of law pursuant to the economic-loss rule. Both parties submitted responses on the issue and, on the first day of trial, the court dismissed the negligence claims.

¶ 5. The trial proceeded on EBWS's contract claims. EBWS and Britly both presented expert testimony regarding which construction defects were attributable to Britly and what the cost would be to repair the problems. EBWS's expert estimated the repairs would cost $38,020 and would require the creamery to cease operations for three weeks. Amy Huyffer, the CEO of EBWS, testified that during a three-week shut-down the creamery would suffer losses of $35,711. She explained that loss would come from two sources: milk the creamery would be required to purchase and dump, and employee wages it would be obligated to pay. Britly's principal, Tassinari, testified that Britly was not responsible for the plumbing, heating and site work of the building and that many of the drainage problems were attributable to work done by others. He further testified that EBWS owed $16,785 for work and materials in unpaid change orders. Britly's expert testified that to fix the ponding and mold problems the floor and walls could be cut and patched with concrete mortar. He estimated the repairs would take three to four days and cost between $7,000 and $8,500.

¶ 6. Following a three-day trial, the jury found Britly had breached the contract and its express warranty, and awarded EBWS: (1) $38,020

in direct damages, and (2) $35,711 in consequential damages. The jury also awarded Britly $3,500 in damages on its counterclaim. Britly filed a motion for judgment as a matter of law or alternatively for a new trial. EBWS filed a motion for attorney's fees. The trial court denied the motions, and both parties appealed.

I.

A. Consequential Damages

¶ 7. We begin by addressing Britly's claim that consequential damages are not available as a matter of law. "A motion for judgment as a matter of law is granted only where there is no legally sufficient basis for a reasonable jury to find for the nonmoving party." *Perry v. Green Mountain Mall*, 2004 VT 69, ¶ 7, 177 Vt. 109, 857 A.2d 793. The relevant facts pertaining to this issue are not in dispute, and thus, our review of the court's legal conclusion is nondeferential and plenary. *N.A.S. Holdings, Inc. v. Pafundi*, 169 Vt. 437, 438-39, 736 A.2d 780, 783 (1999).

¶ 8. The jury's award to EBWS included compensation for both direct and consequential damages that EBWS claimed it would incur while the facility closed for repairs. Direct damages are for "losses that naturally and usually flow from the breach itself," and it is not necessary that the parties actually considered these damages. *A. Brown, Inc. v. Vt. Justin Corp.*, 148 Vt. 192, 196, 531 A.2d 899, 901 (1987). In comparison, special or consequential damages "must pass the tests of causation, certainty and foreseeability, and, in addition, be reasonably supposed to have been in the contemplation of both parties at the time they made the contract." *Id.* at 192, 531 A.2d at 902.

¶ 9. In this case, the trial court concluded that EBWS was not entitled to future lost profits, but did allow EBWS to present evidence of costs it would incur during a three-week closure — specifically, ongoing payments for milk and staff wages. On appeal, Britly contends that these damages are not available as a matter of law because the payments are prospective and voluntary and thus neither certain nor foreseeable. EBWS counters that Britly failed to properly preserve this argument below. We conclude that Britly properly preserved its objection and that the court erred in submitting these elements of damages to the jury.

¶ 10. Although EBWS agrees that Britly generally objected to the inclusion of consequential damages, EBWS argues that Britly should have presented a clearer statement of its objection, specifically, that

the damages for milk and wages were not recoverable because they were uncertain and voluntary. The stated objections were adequate to meet our standard. A motion for judgment as a matter of law may be made at any time prior to submission of the case to the jury and must specify the judgment sought and the law and facts upon which the moving party relies. V.R.C.P. 50(a)(2). The purposes of this requirement is to allow the trial court to determine if sufficient evidence exists to submit the issue to the jury, and to allow the nonmoving party an opportunity to cure any defects in proof, if possible. *Cooper v. Cooper*, 173 Vt. 1, 11, 783 A.2d 430, 438-39 (2001).

¶ 11. It is evident from the transcript that the trial court understood Britly's objection and responded to it, and that EBWS had an opportunity to rectify any deficiencies in proof. On the second day of trial, at the close of EBWS's evidence, Britly objected to submitting evidence of consequential damages to the jury, based on its theory that lost profits for a new business are inherently speculative. The court deferred its ruling until the following morning. At the beginning of the second day of trial, the court ruled that EBWS could not recover for lost profits because it was not a going concern at the time the contract was entered into, and profits were too speculative. The court concluded, however, that EBWS could submit evidence of other business losses, including future payment for unused milk and staff wages. At the close of the evidence, defendant again moved for judgment as a matter of law on consequential damages. See *Maynard v. Travelers Ins. Co.*, 149 Vt. 158, 160, 540 A.2d 1032, 1033 (1987) (requiring moving party to renew objection at the close of the evidence where the trial court defers ruling at the close of opponent's case). The court reiterated its ruling that lost profits were not recoverable, but reasoned that it was up to the jury whether damages for milk and wages were certain and foreseeable. After the court read the jury instructions, Britly again restated its objection. See V.R.C.P. 51(b) (requiring objection to jury instructions to be made before jury retires to consider verdict).

¶ 12. Although Britly's objections were not phrased with exactly the same terminology it uses on appeal, the objections were clear enough to allow both EBWS to cure defects in proof and the court to rule on the objection. See *Cooper*, 173 Vt. at 11, 783 A.2d at 438-39 (explaining that purpose of requiring an objection on sufficiency of the evidence at the close of the evidence is to allow the nonmoving party an opportunity to cure defects in proof). The trial court understood Britly's objection and responded to it by excluding lost profits, but allowing other expenses. Cf. *Roberts v. Chimileski*, 2003 VT 10, ¶ 14,

175 Vt. 480, 820 A.2d 995 (mem.) (limiting issues on appeal to those that trial court had an opportunity to evaluate). Under these circumstances, we conclude that Britly adequately preserved the issue for appeal.

¶ 13. Having decided that the issue was properly preserved, we turn to the substance of the dispute. At trial, Huyffer, the CEO of EBWS, testified that during a repairs closure the creamery would be required to purchase milk from adjacent Rock Bottom Farm, even though it could not process this milk. She admitted that such a requirement was self-imposed as there was no written output contract between EBWS and the farm to buy milk. In addition, Huyffer testified that EBWS would pay its employees during the closure even though EBWS has no written contract to pay its employees when they are not working. The trial court allowed these elements of damages to be submitted to the jury, and the jury awarded EBWS consequential damages for unused milk and staff wages.

¶ 14. On appeal, Britly contends that because there is no contractual or legal obligation for EBWS to purchase milk or pay its employees, these are not foreseeable damages. EBWS counters that it is common knowledge that cows continue to produce milk, even if the processing plant is not working, and thus it is foreseeable that this loss would occur. We conclude that these damages are not the foreseeable result of Britly's breach of the construction contract and reverse the award.

¶ 15. In assessing EBWS's claim, we draw upon our past cases as a basis for comparison. Particularly instructive is *Norton & Lamphere Constr. Co. v. Blow & Cote, Inc.*, 123 Vt. 130, 183 A.2d 230 (1962). In *Norton*, the plaintiff contracted to perform part of a highway construction project for the defendant. *Id.* at 131-22, 183 A.2d at 232. The defendant, however, never provided the plaintiff with an opportunity to complete the work, and the plaintiff sued for breach of contract. Following a trial, the jury awarded damages to the plaintiff for wages, costs to alter equipment, and financing costs for a loader and crusher. On appeal, the defendant argued that these elements of damages were not foreseeable and were therefore unavailable as a matter of law. We concluded that the first two items were recoverable as consequential damages, but the costs relating to the loader and crusher were not. In affirming the award for wages, we emphasized that the plaintiff had paid workmen in anticipation of the contract, and that the payments were made "solely for the purpose of performing the contract." *Id.* at 136, 183 A.2d at 235. Similarly, the equipment was altered specifically

for performance of the contract and was "made with the full knowledge of the defendant." *Id.* at 137, 183 A.2d at 235.

¶ 16. In contrast, we reversed the trial court's inclusion of damages relating to a loader and stone crusher. Although the plaintiff had purchased these items in connection with its work under the contract and had to pay to finance the purchase, "it was not a circumstance known to the defendant, nor one which could reasonably be supposed to have been in its contemplation at the time it contracted with the plaintiff." *Id.* at 138, 183 A.2d at 236. Consequently, costs relating to the crusher and loader were not recoverable.

¶ 17. In comparison, we conclude that EBWS's claims for consequential damages are more like the finance charges, in that it is not reasonable to expect Britly to foresee that its failure to perform under the contract would result in this type of damages. While we are sympathetic to EBWS's contention that the cows continue to produce milk, even when the plant is closed down, this fact alone is not enough to demonstrate that buying and dumping milk is a foreseeable result of Britly's breach of the construction contract. Here, the milk was produced by a separate and distinct entity, Rock Bottom Farm, which sold the milk to EBWS. There was no output contract between EBWS and Rock Bottom Farm at the time the parties entered their construction contract, and a contractor could not have reasonably anticipated this expense. See *Berlin Dev. Corp. v. Vt. Structural Steel Corp.*, 127 Vt. 367, 372, 250 A.2d 189, 192 (1968) (explaining that where premises were leased several months after building contract was entered into, contractor could not have foreseen that faulty construction would result in damage to tenant's interest).

¶ 18. Similarly, EBWS maintained no employment agreements with its employees obligating it to pay wages during periods of closure for repairs, dips in market demand, or for any other reason. Any losses EBWS might suffer in the future because it chooses to pay its employees during a plant closure for repairs would be a voluntary expense and not in Britly's contemplation at the time it entered the construction contract. It is not reasonable to expect Britly to foresee losses incurred as a result of agreements that are informal in nature and carry no legal obligation on EBWS to perform. "[P]arties are not presumed to know the condition of each other's affairs nor to take into account contracts with a third party that is not communicated." *Id.* at 371, 250 A.2d at 192. While it is true that EBWS may have business reasons to pay its employees even without a contractual obligation, for example, to ensure employee loyalty, no evidence was introduced at trial by EBWS to

support a sound rationale for such considerations. Under these circumstances, this business decision is beyond the scope of what Britly could have reasonably foreseen as damages for its breach of contract. See *Wyatt v. Palmer*, 165 Vt. 600, 602-03, 683 A.2d 1353, 1357 (1996) (mem.) (reversing trial court's award of damages for lost opportunity to refinance a mortgage in breach of a construction contract); *Albright v. Fish*, 138 Vt. 585, 590, 422 A.2d 250, 254 (1980) (rejecting claim for interest on loans and future property taxes on land purchased resulting from breach of a restrictive land covenant).

¶ 19. In addition, the actual costs of the wages and milk are uncertain. Unlike the wages in *Norton* that were paid in anticipation of the contract, the milk and wages here are future expenses, for which no legal obligation was assumed by EBWS, and which are separate from the terms of the parties' contract. We note that at the time of the construction contract EBWS had not yet begun to operate as a creamery and had no history of buying milk or paying employees. See *Berlin Dev. Corp.*, 127 Vt. at 372, 250 A.2d at 193 (explaining that profits for a new business are uncertain and speculative and not recoverable). Thus, both the cost of the milk and the number and amount of wages of future employees that EBWS might pay in the event of a plant closure for repairs are uncertain. Cf. *Norton*, 123 Vt. at 136, 183 A.2d at 235 (allowing consequential damages for wages already paid in anticipation of contract).

## B. Motion for a New Trial

¶ 20. Britly also contends that the trial court erred in denying its motion for a new trial because the jury's verdict was against the substantial weight of the evidence. Britly argues that there was evidence that the defective construction was attributable to work performed by contractors employed directly by EBWS and not within Britly's control. Specifically, Britly points to testimony that defects in the work performed by the site worker and the plumber, who were outside of Britly's control, contributed to the drainage problems with the floor. Because the jury awarded the full amount of the repair costs to EBWS, Britly concludes that the jury's verdict was against the substantial weight of the evidence. We affirm.

¶ 21. On a motion for a new trial, the trial court must view the evidence in the light most favorable to the jury verdict. V.R.C.P. 59; *Pirdair v. Med. Ctr. Hosp. of Vt.*, 173 Vt. 411, 416, 800 A.2d 438, 442-43 (2002). On appeal, from denial of a motion for a new trial, we will reverse only if the court has abused its discretion. *Hardy v. Berisha*,

144 Vt. 130, 134, 474 A.2d 93, 95 (1984). Viewing the evidence in the light most favorable to EBWS, we conclude that there was sufficient evidence to support the jury's verdict in its favor and find no abuse of discretion.

¶ 22. At trial, EBWS's expert testified that the construction defects in the creamery, specifically the drainage problems, were a result of Britly's work. The expert averred that the floor of the creamery failed to conform to the specifications in the contract and fell below the industry standard because it did not properly slope to the drains. This caused ponding in several areas on the floor and mold to develop on the walls. In the expert's opinion, the floor's drainage and ponding problems were caused by drains set too high and an improperly installed concrete slab. The expert explained that it is industry practice to insure that drains are set at the correct height before pouring concrete.

¶ 23. In response, Tassinari, Britly's principal, testified that the plumber, who was working directly for EBWS and outside of Britly's control, set the drains too high and caused the drainage problems. Tassinari further opined that "it is not an industry standard for the concrete guy to check the elevation of floor drains."

¶ 24. Viewing this evidence in the light most favorable to EBWS, we conclude that there was enough evidence to support the jury's verdict that Britly was responsible for the construction defects. Although Britly presented evidence that the plumber failed to properly install the drains, there was additional evidence on the issue of whether Britly was responsible for the resulting defects in the floor. EBWS's expert testified that Britly had a responsibility to check the plumber's work and insure the floor sloped properly to the drains before pouring the concrete. See *Lapoint v. Dumont Constr. Co.*, 128 Vt. 8, 10-11, 258 A.2d 570, 571 (1969) (explaining that even where contractor did not personally make faulty connection, he was ultimately responsible and thus liable). The jury was free to credit the testimony of EBWS's expert over Britly's.

II.

A. Consumer Fraud

¶ 25. We turn to EBWS's claims in its cross-appeal. EBWS first argues that the trial court erred in dismissing its consumer fraud and negligence claims on summary judgment. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P.

56(c)(3); *O'Donnell v. Bank of Vt.*, 166 Vt. 221, 224, 692 A.2d 1212, 1214 (1997). On appeal, we apply the same standard as the trial court. *Id.* In addressing these claims, we assume as true all allegations presented by EBWS. *Hodgdon v. Mt. Mansfield Co.*, 160 Vt. 150, 158-59, 624 A.2d 1122, 1127 (1992).

■ ¶ 26. EBWS's claim arises under § 2453(a) of Vermont's Consumer Fraud Act. See generally Consumer Fraud Act, 9 V.S.A. § 2451. To survive summary judgment, EBWS must demonstrate: (1) that Britly made a representation or omission that was likely to mislead; (2) that EBWS interpreted the message reasonably under the circumstances; and (3) that the misleading effects were material. See *Jordan v. Nissan N. Am., Inc.*, 2004 VT 27, ¶ 5, 176 Vt. 465, 853 A.2d 40 (listing elements of a consumer fraud claim).

¶ 27. EBWS argues that at their first meeting Britly's president, Tassinari, made five statements that constituted negligent misrepresentation and consumer fraud. When EBWS first inquired as to whether Britly could build the creamery, Tassinari responded, "No problem, I can do that." He claimed that he had built buildings "substantially more complex" and that "this is an easy building." Finally, he remarked that the creamery would take "two months start to finish" and that he could have EBWS "in the building by the end of January."

■ ¶ 28. We agree with the trial court that "there is no evidence that the [Tassinari] statements were false or misleading in any material way." The court reasoned that none of the allegations regarding poor construction, including failure to properly slope the concrete floor, revealed an inability to design and build a creamery. Thus, the first three statements were not inaccurate or likely to mislead because there was no evidence that Britly was incapable of building a creamery or that building a creamery was uniquely demanding. Moreover, Britly's statements regarding the length of time it would take to complete the creamery did not amount to fraud because the statements were not likely to mislead. By the time that EBWS entered into its contract with Britly, it was already January and more than two months had elapsed since the parties' first meeting. Therefore, when it entered the construction contract, EBWS knew that the building would not be completed in two months and that it would not be in the building by the end of January.

## B. Negligence Claims

¶ 29. EBWS appeals the trial court's dismissal of its claims for negligent design and execution. The trial court issued a show cause order for EBWS to explain why its negligence claims should not be dismissed pursuant to the economic-loss rule because EBWS alleged solely economic damages. EBWS responded that Britly's work was an exception to the economic-loss rule because it was a professional service. In an oral ruling on the first day of trial, the court concluded that the professional-services exception to the economic-loss rule required some kind of special relationship between the parties, which was absent in this case. Consequently, the court dismissed EBWS's negligence claims because any alleged negligence caused purely economic damages. On appeal, EBWS claims that designing and building the creamery was a professional service akin to architecture that should fall within a professional-services exception to the economic-loss rule. Britly counters that because it was not a licensed architect it was not providing professional services within the meaning of the exception. We affirm the court's decision that Britly's work did not fall within an exception to the economic-loss rule.

¶ 30. The economic-loss rule prohibits recovery in tort for purely economic losses. *Springfield Hydroelec. Co. v. Copp*, 172 Vt. 311, 314, 779 A.2d 67, 70 (2001). The rule strives to maintain a separation between contract and tort law. In tort law, duties are imposed by law to protect the public from harm, whereas in contract the parties self-impose duties and protect themselves through bargaining. See *id.* Thus, negligence actions are limited to those involving unanticipated physical injury, and "claimants cannot seek, through tort law, to alleviate losses incurred pursuant to a contract." *Id.* In *Springfield,* we recognized that there might be recovery for purely economic losses in a limited class of cases involving violation of a professional duty. *Id.* at 316, 779 A.2d at 71-72. We did not specify which services would fall into such an exception, but explained that although the appellees in that case "maintained complex and highly specialized responsibilities," they "did not hold themselves out as providers of any licensed professional service." *Id.* at 316-17, 779 A.2d at 72.

¶ 31. Purely economic losses may be recoverable in professional services cases because the parties have a special relationship, which creates a duty of care independent of contract obligations. *Id.* at 316, 779 A.2d at 71-72. Thus, the key is not whether one is licensed in a particular field, as the parties have focused upon; rather, the deter-

mining factor is the type of relationship created between the parties. See *Business Men's Assurance Co. v. Graham*, 891 S.W.2d 438, 453 (Mo. Ct. App. 1994) (allowing party to sue for purely economic damages in tort "if the party sues for breach of a duty recognized by the law as arising from the relationship or status the parties have created by their agreement"). Although a license may be indicative of this relationship, it is not determinative.

¶ 32. No such relationship existed in this case. Britly presented itself as a construction contractor and not as a provider of a specialized professional service. EBWS did not rely on Britly to provide it with a professional service, and, consequently, it paid for the services of a contractor not a professional architect. See *Berschauer/Phillips Constr. Co. v. Seattle Sch. Dist. No. 1*, 881 P.2d 986, 992 (Wash. 1994) (noting that fees "charged by architects, engineers, contractors, developers, vendors, and so on are founded on their expected liability exposure as bargained and provided for in the contract"); see also *Moransais v. Heathman*, 744 So. 2d 973, 976 (Fla. 1999) (explaining the difference between a general contractual duty to deliver services in a workmanlike manner and the professional duty to use standard of care used by similar professionals). Thus, we conclude there was no special duty of care created beyond the terms of the construction contract and no exception to the economic-loss rule applies.

## C. Attorney's Fees & Prejudgment Interest

¶ 33. Finally, we address EBWS's request for attorney's fees, expenses and prejudgment interest. Following the verdict, EBWS filed a motion requesting attorney's fees both as due under the contract and pursuant to statute. The construction contract states that in a suit to recover damages for breach of contract, "the prevailing party shall be entitled to recover reasonable attorneys' fees, costs, charges, and expenses expended or incurred therein." In addition, Vermont's construction contracts statute requires an award of reasonable attorney's fees to "the substantially prevailing party." 9 V.S.A. § 4007(c). The trial court denied EBWS's request in a motion response form, without any explanation. We conclude that EBWS properly requested attorney's fees and that the court erred in summarily denying the request.

¶ 34. A request for attorney's fees and related expenses must be made by motion no later than fourteen days after entry of judgment. V.R.C.P. 54(d)(2)(B). Under the rule, once a party requests fees, the court "shall find the facts and state its conclusions of law." V.R.C.P.

54(b)(2)(C). The trial court has discretion in crafting the amount of an award, but where fees are due by law, it is an abuse of discretion to deny all fees. See *Perez v. Travelers Ins.*, 2006 VT 123, ¶¶ 8-9, 181 Vt. 45, 915 A.2d 750 (explaining that an award is mandatory when fees are due pursuant to a statutory fee-shifting provision). But see *Fletcher Hill, Inc. v. Crosbie*, 2005 VT 1, ¶ 12, 178 Vt. 77, 872 A.2d 292 (holding that the question of whether a party substantially prevailed within the meaning of 9 V.S.A. § 4007(c) is a matter for the trial court's discretion).

▆▆▆ ¶ 35. Here, EBWS complied with Rule 54(d)(2) and submitted a motion for attorney's fees to the court following the jury's verdict. Following this request, the court made no findings concerning whether EBWS was entitled to fees under the contract as the "prevailing party," or whether it was entitled to fees pursuant to statute as the "substantially prevailing party." Thus, without any findings or conclusions to support its decision, we conclude the court erred in denying fees. See *Murphy v. Stowe Club Highlands*, 171 Vt. 144, 163-64, 761 A.2d 688, 702 (2000) (explaining that generally the jury must determine whether attorney's fees are due pursuant to a contract, but fees may be awarded without a jury finding if due by law); *Bonanno v. Bonanno*, 148 Vt. 248, 251, 531 A.2d 602, 604 (1987) ("On review, the trial court's findings will be deemed insufficient when we are left to speculate as to the basis of the trial court's decision."). We remand for the court to make findings and conclusions pertaining to attorney's fees.

▆▆▆ ¶ 36. EBWS also requests prejudgment interest as a mandatory award because it contends that the direct damages were reasonably ascertainable. As with the attorney's fees, the court denied prejudgment interest without explanation. Prejudgment interest is awarded as of right when damages are liquidated or reasonably certain. *Agency of Natural Res. v. Glens Falls Ins. Co.*, 169 Vt. 426, 435, 736 A.2d 768, 774 (1999). The rationale is that "'the defendant can avoid the accrual of interest by simply tendering to the plaintiff a sum equal to the amount of damages.'" *Id.* (quoting *Johnson v. Pearson Agri-Sys., Inc.*, 350 N.W.2d 127, 130 (Wis. 1984)). In those cases where the amount of damages is uncertain or disputed, the trial court may award prejudgment interest in a discretionary capacity. *Estate of Fleming v. Nicholson*, 168 Vt. 495, 501, 724 A.2d 1026, 1029 (1998).

▆▆▆ ¶ 37. We conclude that prejudgment interest was not mandatory in this case. Although EBWS claims that the amount of direct damages is certain, there was much controversy at trial as to what

repairs were necessary and how much it would cost to complete repairs. EBWS and Britly presented conflicting expert testimony about how to correct the drainage problems. EBWS's expert recommended removing and replacing the floor and interior walls of the creamery, explaining that this was the only solution that would work in the long-term. The expert testified the repairs would take three weeks and cost $38,020. In contrast, Britly's expert testified that to fix the ponding and mold problems, the floor and walls could be cut and patched with concrete mortar. He estimated the repairs would take three to four days and cost between $7,000 and $8,500. Thus, the amount of damages was not reasonably certain, *Winey v. William E. Dailey, Inc.*, 161 Vt. 129, 141, 636 A.2d 744, 752 (1993) (noting that where there is conflicting expert testimony, the amount is not reasonably certain), and it was within the court's discretion to deny prejudgment interest in this case. *Estate of Fleming*, 168 Vt. at 501, 724 A.2d at 1030 (deferring to trial court's determination of whether prejudgment interest is available in cases where the amount of damages is not reasonably ascertainable).

*Award for consequential damages is reversed, and the case is remanded for consideration of attorney's fees; otherwise, affirmed.*